INTERNATIONAL MILLING COMPANY, Appellant, vs. PRIEM, Respondent.

*January 12—February 6, 1923.*

*Fraud: False representations: When actionable: Reliance.*

1. A false representation, to be actionable, must consist of a statement of fact which is untrue, made with intent to defraud and for the purpose of inducing the other party to act on it, and the other party must have relied and acted on it to his damage.
2. Reliance on statements as to value may be justified by lack of knowledge on the one side and the assumption of knowledge on the other.
3. The evidence in this case is *held* to sustain the verdict of the jury that defendant, a man of limited knowledge conducting a general store in a rural settlement who did not keep posted on market quotations, purchased a carload of flour because of false representations as to market quotations made by plaintiff's agent.
4. Plaintiff's agent having induced the son of the defendant to sign a contract for the purchase of flour by falsely representing that the market price of wheat had risen within the thirty-day period previous to the execution of the contract, a clause in such contract to the effect that there were no representations or guaranties except such as may be written on the face of the contract is not binding on the defendant, as fraud destroys the validity of everything into which it enters.

APPEAL from a judgment of the municipal court of Langlade county: ARTHUR GOODRICK, Judge. *Affirmed.*

The appeal is from a judgment in defendant's favor dismissing plaintiff's complaint with costs. The facts will appear in the opinion.

For the appellant the cause was submitted on the briefs of *E. A. Morse* of Antigo and *H. L. Hoidale* of Minneapolis, Minnesota, and for the respondent on that of *Hay & White* of Antigo.

DOERFLER, J.   The plaintiff, a foreign corporation operating a flouring mill at Wells, Minnesota, executed a contract with the defendant on the 16th day of October, 1920, under and pursuant to which the plaintiff agreed to sell and the defendant agreed to buy 200 barrels of flour known as the Ethan Allen brand, at $12.65 per barrel, and such contract also included the sale of six barrels of bran. The contract, in the absence of the defendant, was signed by his son Richard, and, as defendant claims, without his consent or knowledge and contrary to his express directions. As a defense to the plaintiff's cause of action based on damages for refusal on defendant's part to accept the flour, etc., defendant alleged fraud.

It also appears from the record that the defendant, with the co-operation of his wife and thirteen children, conducted a general store at Lily, Wisconsin, a small unincorporated settlement containing not to exceed ten structures; that the defendant was only partially conversant with the English language; that he read but one paper, a weekly published in the German language; that he kept a daily English paper, published at Antigo, which contained reports of the market quotations, which he neither read nor was familiar with; that in his purchase of merchandise he placed implicit faith in the honesty of the dealers; that his principal assistant in the store was his son Richard, a youth

twenty-three years of age, and that his said son had no authority to sign contracts or give orders for the purchase of flour excepting pursuant to defendant's express directions.

When plaintiff's agent, one Geise, called upon the defendant on October 15, 1920, to secure an order for a carload of flour, the agent represented to the defendant and his son Richard that the price of wheat had been going up during the last thirty days, and the statement was made to the defendant that flour had advanced during the last thirty days. The making of these representations is uncontradicted in the evidence, as is also the testimony of the defendant that he relied upon these statements and was induced thereby to give the order referred to.

The case was submitted to a jury, who, among other things, found (a) that the plaintiff's agent, prior to the execution of the contract, falsely represented to the defendant or his son that the market price of wheat had risen during the period of thirty days previous to the execution of the contract; (b) that such false representations constituted a material inducement to the defendant to enter into said contract; and (c) that the defendant or his son relied upon the said fraudulent representations when the contract was executed.

To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage. 12 Ruling Case Law, p. 240, § 10; *J. H. Clark Co. v. Rice*, 127 Wis. 451, 106 N. W. 231; *Standard Mfg. Co. v. Slot*, 121 Wis. 14, 18, 19, 98 N. W. 923; *Hart v. Moulton*, 104 Wis. 349, 359, 80 N. W. 599; *Krause v. Busacker*, 105 Wis. 350, 354, 81 N. W. 406; *Zunker v. Kuehn*, 113 Wis. 421, 425, 88 N. W. 605.

The evidence disclosing the making of the fraudulent statements is uncontradicted. Defendant still had on hand about seventy barrels of flour, purchased from the plaintiff during the preceding year; and it appears further that no other flour had been purchased by him for about one year. Plaintiff's only witness testified that the price of flour fluctuated in accordance with the price of wheat. In determining whether the statements so made are material statements of fact, and whether they had a natural tendency to induce the defendant to enter into the contract, and whether they actually did induce such contract on the part of the defendant, we must take into consideration all the facts and circumstances in the evidence. With but one exception the defendant had purchased from time to time all of his flour in small lots, sufficient only to meet the requirements of his immediate trade. This alleged contract was executed shortly after the war, while readjustments in prices were in process of settlement. Violent fluctuations had taken place in the market, covering a considerable period of time. Manufacturers, jobbers, and dealers were greatly agitated as to ultimate results, and every one dealing with merchandise strained his efforts to the utmost to protect himself financially with respect to the future. It was at such a time and under such circumstances that plaintiff's agent appeared at Lily and made the representations aforesaid. Under the circumstances it is difficult to conceive of any statement being made at that time which would be more conducive to effecting a sale and a purchase, and had the statement been true, the defendant, from a business standpoint, would have been justified in straining his financial resources in order to enter into this contract. Defendant was a man of limited knowledge, conducting a small merchandise general store in a petty, out-of-the-way rural settlement, depending to a considerable extent upon the patronage of the farming community in the immediate vicinity. He did not

keep posted upon the market quotations, and relied mainly upon the honesty of the statements of dealers with whom he had been accustomed to do business. Plaintiff's agent, a representative of a large corporation engaged in the milling business, owning and operating seven different flouring mills situated in various localities both in the States and in Canada, was in daily contact with the latest market quotations, and there is no contention whatever in the case that he was not familiar with the fluctuating prices of wheat during this period of readjustment.

The annual report of the Minneapolis Chamber of Commerce, offered and received in evidence, showed the daily closing price of wheat from September 15 to December 4, 1920. This report showed that on September 15th such closing price was $2.60⅝ per bushel, and on the 15th day of October was $2.28¼ per bushel. With slight fluctuations there was a gradual decline in wheat up to October 8th, when the market price fell to $2.07¼, and from thence on a gradual increase is noted up to October 15th. Under these facts, undisputed in the evidence, the statement relied on was absolutely false.

Plaintiff's counsel contend that the defendant at all times had available, from the market quotations in the Antigo paper, the fluctuating prices of wheat, and not having observed them, or not having made an effort to ascertain them, he cannot successfully rely on the defense of fraud pleaded in the answer. No one knew better the situation of the defendant, his knowledge of market prices, the character of the business conducted by the defendant, the manner of its conduct, the place where defendant's business was transacted, and all the surrounding facts and circumstances, than plaintiff's agent. It was part of his business to sell flour to such trade. Assuming that the defendant at the time the statement was made had available information of the market price of wheat on October 15th, there is nothing to show

that he had before him at that time or had preserved the various dailies of the Antigo issue covering the period of thirty days prior to October 15th. Under such circumstances the defendant could well rely upon the inducing statements made by plaintiff's agent, and the testimony is conclusive that he did so. 12 Ruling Case Law, p. 374, § 126.

Reliance on statements as to value may be justified by lack of knowledge on the one side and the assumption of knowledge on the other. 12 Ruling Case Law, p. 382, § 132, and cases cited in note.

But counsel for plaintiff rely upon the provision in paragraph 9 of the contract, in which it is said: "There are no representations, guarantees, or warranties except such as may be written on face hereof, if any, nor any agreements collateral hereto."

In 12 Ruling Case Law, p. 386, § 136, it is said:

"It is well settled that a person who signs an instrument without reading it [and such is the fact in the instant case according to the undisputed evidence] when he has the opportunity to read and can read, cannot avoid the effect of his signature merely because he was not informed of its contents; and the same is true though he cannot read, if he neglects to have it read, or to inquire as to its contents. But the rule is otherwise where the execution of the instrument is obtained by fraud, and in such case the instrument is not binding on the party executing it though he did not read it or request that it be read to him." See cases cited in notes under this section.

"Fraud destroys the validity of everything into which it enters. It vitiates the most solemn contracts, documents, and even judgments." *In re Ernst, post,* p. 646, 192 N. W. 65, decided herewith, and cases therein cited. See, also, *Fivey v. Pennsylvania R. Co.* 67 N. J. Law, 627, 52 Atl. 472, 91 Am. St. Rep. 455; *Griffin v. Roanoke R. & L. Co.* 140 N. C. 514, 53 S. E. 307, 6 L. R. A. n. s. 463, and note;

*Jones v. Bankers Trust Co.* 239 Fed. 770, 774. Our own court has definitely decided the question involved in *Shepard v. Pabst,* 149 Wis. 35, 47, 135 N. W. 158.

There are a number of very persuasive incidents connected with and surrounding this transaction which properly can be considered as supporting the charge of fraud, in addition to what has heretofore been referred to, but we are convinced that the charge is fully supported and established by clear and satisfactory evidence as already shown, without further reference thereto. In fact, under the admitted evidence, it is extremely doubtful whether a verdict in plaintiff's favor in any event could be upheld on this issue.

We therefore hold that there is ample evidence to support the answers of the jury to the questions of the special verdict on the subject of fraud. The other questions involved herein it will not be necessary for us to consider. The judgment of the lower court is therefore affirmed.

*By the Court.*—Judgment affirmed.