McCLUSKEY, Respondent, v. THRANOW and another, Appellants.

*May 9—June 7, 1966.*

For the appellant Thranow there were briefs by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Bernard J. Hankin*.

For the appellant St. Michael Hospital there was a brief by *Ray T. McCann*, and oral argument by *Richard A. McDermott*, both of Milwaukee.

For the respondent there was a brief by *Gorectke, Harris & Richman* of Milwaukee, and oral argument by *Alvin Richman*.

HEFFERNAN, J.

1. *Is the period of limitations tolled until such time that the malpractice is discovered?*

Under sec. 330.205, Stats.,[1] the statute of limitations applicable to personal injuries, an action must be brought

[1] Sec. 330.205, Stats., provides:

"**Within 3 years.** Within 3 years:

"(1) An action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955, unless notice in writing as provided in s. 330.19 (5), 1955 statutes, was served prior to July 1, 1959, in which event s. 330.19 (5), 1955 statutes,

within three years, except for those instances where a notice of injury was served prior to July 1, 1959. In those cases the six-year limitation of sec. 330.19 (5), Stats. 1955, applies. Since no notice of injury was served, the action in the usual course of events was barred three years after the surgery that took place on May 1, 1956. The plaintiff contends, however, that in a malpractice case the injury is not "sustained" in terms of the statute of limitations until the victim discovers that he was in fact negligently injured. In this case, this discovery first occurred in May of 1962, when he was presented with the objective X ray finding the hemostat was in his body.

Whatever the abstract merits of the plaintiff's contention may be, this question is not open to new adjudication in Wisconsin.[2] The point was clearly decided in *Reistad v. Manz* (1960), 11 Wis. (2d) 155, 105 N. W. (2d) 324. In that case the plaintiff contended that both the notice-of-injury statute and the statute of limitation commence to run only when the injured party discovers the presence of a foreign object left in his body by a physician's negligence. This court therein held that the period of limitations commenced running at the time the malpractice was committed. The court reasoned that, in a proper case, the legislature could have tolled the statute of limitations until such time as the injured party might reasonably

shall apply. But no action to recover damages for injuries to the person, received without this state, shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or country in which such injury was received unless the person so injured shall, at the time of such injury, have been a resident of this state.

"(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another where death resulted on or after July 1, 1955."

[2] For a result similar to that reached here, see *Hawks v. DeHart* (1966), 206 Va. 810, 146 S. E. (2d) 187. For jurisdictions that apply a "date of discovery" rule, see Note, 17 Vanderbilt Law Review (1964), 1577, and Anno. 80 A. L. R. (2d) 368.

have discovered the tort, but the legislature did not see fit to do so. We pointed out that where the action arose as a result of fraud, the legislature had seen fit to toll the running of limitations; and, in such a case, the cause of action was not deemed to have accrued until the discovery of the facts constituting the fraud.[3] It was assumed by the court that, under the rule of statutory construction of *expressio unius est exclusio alterius,* the legislature, therefore, did not intend to extend the exception to simple negligence or malpractice. A similar rationale was used in *Peppas v. Marshall & Ilsley Bank* (1957), 2 Wis. (2d) 144, 148, 86 N. W. (2d) 27, where we held that the statute of limitations began to run at the time a bank negligently honored a check, even though the plaintiff did not discover the negligence until a much later date.

Similarly, an exception is made in workmen's compensation cases, and the statute of limitations does not run against an employee until he "knew or ought to have known the nature of his disability and its relation to his employment." Sec. 102.12, Stats.

No similar exception appears in the statute of limitations pertaining to personal injuries. The legislature, having determined that the statute of limitations in fraud cases be tolled until the aggrieved party knew the facts, must be assumed to have rejected such a proposition in regard to negligence.

We, therefore, conclude that, in accordance with the well-established law of this state, the period of limitations commenced running on May 1, 1956, and, accordingly, the plaintiff's action for negligence is barred.

---

[3] Sec. 330.19 (7), Stats., provides:

"Within 6 years . . . Within 6 years: . . . (7) An action for relief on the ground of fraud. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

## 2. *Has the plaintiff presented any evidentiary facts from which fraud could be established?*

As an additional argument, the plaintiff claims that both the surgeon and the hospital are chargeable with fraud and that where fraud exists, under sec. 330.19 (7), Stats., *supra,* the statute of limitations commences to run not from the time the fraud was committed, but from the time of the discovery by the aggrieved party of the facts constituting the fraud. In that event, the cause of action is not deemed to have accrued until the discovery of those facts. The plaintiff's complaint sounds primarily in negligence and not in fraud. Fraud, if an element in this case, must arise out of a false representation. We have held that for a misrepresentation to be fraudulent, it must consist "first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage." *International Milling Co. v. Priem* (1923), 179 Wis. 622, 624, 192 N. W. 68.

The representations the plaintiff relies upon are that the hospital and Doctor Thranow "indicated by word and by deed" that the plaintiff was in condition to be discharged from the hospital and that the surgery was complete and proper. It is not alleged that those representations were made with the knowledge that they were false; and while the discharge of the patient under the circumstances present here would be negligence, the necessary elements of fraud are not alleged.

However, the complaint also alleges that the defendants, having knowledge of the May 4, 1956, X ray, knew of the presence of the hemostat and fraudulently and wrongfully failed to disclose its presence to the plaintiff. If we assume this knowledge upon the part of the surgeon and the hospital and if, as alleged, the plaintiff was

nevertheless assured that he was in fit condition to be released from the hospital and was released, the conduct constitutes more than the mere concealment of a cause of action. *Suskey v. Davidoff* (1958), 2 Wis. (2d) 503, 87 N. W. (2d) 306, and *Krestich v. Stefanez* (1943), 243 Wis. 1, 9 N. W. (2d) 130. It is, in fact, an allegation of active fraud and states a cause of action. Though a cause of action is stated, this matter is before the court on summary judgment, and the question presented is an evidentiary one. We have held the allegations of the complaint may not be considered by the court in determining whether there is a triable issue of fact. We have construed sec. 270.635, Stats., to require the presentation of *evidentiary* facts "by affidavit or other proof," and by "other proof" we mean something besides the allegations in the pleading.[4] Both the surgeon and the hospital have filed affidavits of an evidentiary nature based on personal knowledge. The surgeon has deposed that he had not seen the X ray until 1962 and did not know until then that the hemostat was in the plaintiff's body, and that he then promptly notified the plaintiff. The hospital (by its record custodian) states that the X ray is presently in the possession of the hospital. These affidavits, although leaving open the question of negligence, on their face dispose of any questions of fraud that are raised.

Counteraffidavits that the plaintiff filed to resist the motion for summary judgment are not of sufficiently probative character that they properly raise a factual issue that must be tried. The plaintiff, McCluskey, deposes "on information and belief" that the presence of the hemostat was known to both of the defendants although they did not inform him of it. As we stated in *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 290, 96

[4] *Laughnan v. Griffiths* (1955), 271 Wis. 247, 251, 73 N. W. (2d) 587; *Townsend v. Milwaukee Ins. Co.* (1962), 15 Wis. (2d) 464, 468, 113 N. W. (2d) 126; *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 290, 96 N. W. (2d) 607.

N. W. (2d) 607, and in *Townsend v. Milwaukee Ins. Co.* (1962), 15 Wis. (2d) 464, 113 N. W. (2d) 126, an affidavit upon information and belief is not sufficient to raise a jury question. We pointed out in *McChain, supra,* that such an affidavit is not an affirmance on knowledge and it is not proof. It does not satisfy the requirements of the statute, sec. 270.635 (2), the "setting forth such evidentiary facts."

The plaintiff's attorney deposes that on June 10, 1965, he was told by an employee of the hospital that the X ray was unavailable. He also deposed that the hospital was either unable or unwilling to produce the X ray that he "believed" would show the presence of the hemostat. Even if we assume that the X ray in question did show the hemostat, and though it were proved that the hospital on June 10th wrongfully concealed the X ray, we conclude that this occurrence is irrelevant to the plaintiff's action for fraud. The June 10, 1965, conduct of the hospital—however denominated—took place three years after the plaintiff learned that the hemostat was in his body, six months after the hemostat was removed, and nearly six weeks after this action was commenced by service of a summons. The third element of fraud, that the plaintiff in fact relied upon the representation and was induced to act to his injury or damage (*International Milling Co. v. Priem, supra,* page 624), is not present in the circumstances of the event of June 10th. There is nothing to show that the plaintiff's subsequent conduct was altered one whit. These facts are markedly different than those in *Krestich v. Stefanez* (1943), 243 Wis. 1, 9 N. W. (2d) 130, where a physician assured the plaintiff that certain surgical needles had been removed when he in fact knew they had not been, and where the false representation was made for the purpose of further concealing the presence of the needles and for the purpose of forestalling the plaintiff's announced intention to seek other medical advice. There, as this court stated, the false

representation could cause the "abandonment of her announced intention to seek other medical advice."

In the instant case, there is nothing to show that the alleged deception of June 10th was in any way material to the plaintiff's action for fraud. He was fully aware of the facts of the alleged malpractice and his course of conduct in this lawsuit was determined and under way prior to June 10, 1965. We cannot conclude that this incident, though truly set forth, is probative of fraud in support of the allegations in the complaint. The plaintiff's counteraffidavits do not raise issues of fact that require the submission of the fraud question to a jury.

### 3. *Hospital's defense of charitable immunity.*

The defendant hospital by answer alleges, and by affidavit in support of its motion for summary judgment has submitted, substantial proof that it is a charitable institution. This proof is not disputed by the plaintiff. He contends, however, that, inasmuch as it is his theory that the cause of action did not accrue until May of 1962, the hospital cannot avail itself of the doctrine of charitable immunity which was abolished by this court in *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, 107 N. W. (2d) 292, on January 10, 1961. However, as stated above, we cannot concur in his conclusions with regard to the date the cause of action accrued. Since we conclude that the cause of action accrued on the date of the operation on May 1, 1956, the hospital in this instance is protected by the doctrine of charitable immunity.

The motions for summary judgment of both defendants should have been granted by the court. The order denying the motions for summary judgment is reversed, and the court is directed to enter judgment dismissing the action against both defendants.

*By the Court.*—Order reversed, with directions to dismiss the action against both defendants.