Charlotte E. NEUBAUER, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., et al., Defendants-Appellants, Cross-Appellees,

v.

PITTSBURGH CORNING CORP., et al., Third Party Defendants-Appellants, Cross-Appellees.

Nos. 81–8021 to 81–8033 and 81–1939 to 81–1951.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1982.

Decided Aug. 13, 1982.

As Amended Aug. 18, 1982.

Rehearing Denied Sept. 16, 1982.

Albert J. Goldberg, Milwaukee, Wis., for plaintiffs-appellees, cross-appellants.

Donald H. Carlson, Milwaukee, Wis., for defendants-appellants, cross-appellees.

Before CUMMINGS, Chief Judge, STEWART, Justice (Retired),* and ESCH-BACH, Circuit Judge.

CUMMINGS, Chief Judge.

These appeals require us to determine when the Wisconsin statute of limitations for personal injuries begins running against causes of action for asbestos-caused diseases.

The plaintiffs or decedents in each of the ten cases below were insulation workers who were exposed to insulation containing asbestos. In two of the cases the insulation workers died from mesothelioma, a cancer that allegedly is caused by exposure to asbestos fibers. In the remaining eight cases the workers suffer from asbestosis, a lung disease involving fibrosis of the lungs, pleural thickening, pleural plaques, and shortness of breath. For a detailed description of asbestosis, see *Porter v. American Optical Corp.*, 641 F.2d 1128, 1132–1133 (5th Cir. 1981). The defendants and third-party defendants are or once were manufacturers of asbestos insulation products.

Asbestos products generally have wrought widespread and monstrous suffering. It is reported that insurers of asbestos manufacturers now face roughly 16,000 damage suits and that new cases are filed at the rate of 450 per month. During the past forty years, some nine million American workers still alive today were exposed to asbestos, and a study to be published by the Labor Department estimates that at least 8,500 workers—perhaps as many as 10,000—will die each year until the end of this century from asbestos-related cancers. Wall St.J., June 14, 1982, at 1, col. 6 (Midwest Ed.).

The district court consolidated the ten cases for pretrial purposes. The defendants and third-party defendants moved for sum-

mary judgment in nine of the actions based on Wisconsin's three-year statute of limitations for personal injury and wrongful death, Wis.Stat. §§ 893.14, 893.205(1), and 893.205(2) (1977). The district court denied the motions, but certified that its denial "involves a controlling issue of law as to which there is a substantial ground for difference of opinion, and an immediate appeal therefrom may materially advance the ultimate termination of the litigation." Order of April 6, 1981 at 9. We then permitted these interlocutory appeals pursuant to 28 U.S.C. § 1292(b).

I

There is no dispute that Wisconsin law governs these causes of action and that Sections 893.14, 893.205(1), and 893.205(2) of the 1977 Wisconsin Statutes comprise the applicable statutes of limitations.[1] Those sections provide:

893.14 Actions, time for commencing.

The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued * * *.

893.205 Within 3 years.

Within 3 years:

(1) An action to recover damages for injuries to the person * * *.

(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another * * *.

The dispute underlying the motions for summary judgment concerns when a cause of action for asbestos-caused injuries "has accrued" within the meaning of these statutes and thus when the three-year period has begun running.

Wisconsin law is well established up to a point. "A cause of action accrues when

---

* The Honorable Potter Stewart, Associate Justice (Retired) of the Supreme Court of the United States, is sitting by designation.

1. Effective July 1, 1980, Sections 893.14, 893.-205(1), and 893.205(2) of the 1977 Wisconsin Statutes were repealed and replaced by new Sections 893.04 and 893.54. 1979 Wis. Laws, ch. 323, § 28. Except for an amendment con-

cerning medical malpractice actions (new § 893.55), the new statutes are essentially the same as those quoted in the text. Personal injury and wrongful death actions must be commenced "within 3 years" (new § 893.54) "from the time that the cause of action accrues" (new § 893.04).

there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Barry v. Minahan*, 127 Wis. 570, 573, 107 N.W. 488 (1906). In order to have "a claim [in tort] capable of present enforcement," the Wisconsin Supreme Court has held the plaintiff must have suffered "an injury," or "damages." See, *e.g., United States Fire Ins. Co. v. E.D. Wesley Co.*, 105 Wis.2d 305, 316, 313 N.W.2d 833 (1982); *Holifield v. Setco Industries, Inc.*, 42 Wis.2d 750, 755, 168 N.W.2d 177 (1969). The problem in the instant cases is to fix a time during the course of the plaintiffs' progressive development of asbestos-caused disease when the plaintiffs were "injured" and the limitations period began running.

There are roughly three different times during the course of an asbestos disease when a plaintiff might be deemed to have received the injury that starts the limitations period: when (or while) the plaintiff is exposed to asbestos, when the plaintiff's disease is first medically diagnosable, or when the plaintiff's disease has manifested itself by symptoms such as shortness of breath that should or in fact do alert the plaintiff to the presence of a disease. Although no Wisconsin case is directly in point, the cases tend to support the second of these times, so that a cause of action accrues when the disease becomes diagnosable. Because of the importance of the question, we would have preferred to certify it to the Wisconsin Supreme Court, but no such procedure exists.

## II

The district court held that the relevant injury occurs simultaneously with exposure and, presumably because continued exposure entails continued injury, that the statute of limitations begins to run at the date of the plaintiff's last exposure to asbestos. Order of January 9, 1981 at 7. Third-party defendant Owens-Illinois, which is the only party on appeal to support the district court's theory, gives two reasons for deeming injury to occur with exposure: (1) "the

mere presence of asbestos fibers constitutes an insult to the body" and (2) damage to the lungs often begins "shortly after the initial inhalation of asbestos fibers." Brief at 7.

There is some support in the Wisconsin cases for holding that a cause of action accrues when the body is invaded by a foreign substance. *E.g., Peterson v. Roloff*, 57 Wis.2d 1, 203 N.W.2d 699 (1973) (remnant of gallbladder and gauze left in abdomen); *McCluskey v. Thranow*, 31 Wis.2d 245, 142 N.W.2d 787 (1966) (eight-inch metal hemostat left in abdomen). In those cases, the Wisconsin Supreme Court has held that the injury occurred at the time the foreign object was placed in the body, rather than when the plaintiff began suffering from the implantation, *Peterson v. Roloff*, 57 Wis.2d at 3–7, 203 N.W.2d 699, or eventually discovered the presence of the foreign object. *McCluskey v. Thranow*, 31 Wis.2d at 248–249, 142 N.W.2d 787. The Wisconsin Supreme Court has been clear, nevertheless, that "the date of the negligent act [*i.e.*, when the foreign object invades the body] is not necessarily the benchmark for the commencement of a period of limitations. Only in the event the injury occurs on the same date can it be said the cause of action then 'accrues.' " *Olson v. St. Croix Valley Memorial Hospital, Inc.*, 55 Wis.2d 628, 632, 201 N.W.2d 63 (1972). The Court has been even more careful in defective products cases to distinguish the dates of negligence and injury. "Even if the negligence that caused the injury occurred substantially in the past, as in products liability cases, the period of limitations commences to run from the time of injury, and not from the time of the negligent act or omission * * *." *United States Fire Ins. Co. v. E.D. Wesley Co.*, 105 Wis.2d 305, 311, 313 N.E.2d 833 (1982) (quoting *Rosenthal v. Kurtz*, 62 Wis.2d 1, 6, 213 N.W.2d 741 (1974)).

■ Thus the "injury" that starts the clock running is not the defendants' allegedly wrongful act of exposing the plaintiffs to asbestos, but instead the onset of harm to each plaintiff sufficient that "he

can come into court, plead and prove certain facts and secure the relief requested." *Holifield v. Setco Industries, Inc.*, 42 Wis.2d 750, 754, 755–756, 758–759, 168 N.W.2d 177 (1969). In the medical malpractice cases so far to come before the Wisconsin Supreme Court, the malpractice and the harm have been coincidental. In each case, the injury has been sufficiently established at the time of the malpractice that a plaintiff could bring suit immediately without his damages being too speculative to permit recovery. For example, even if a hemostat were causing no present discomfort, the plaintiff could sue immediately for removal of it from his abdomen.

On the contrary, as we understand the matter, not all persons who are exposed to asbestos contract asbestosis or the other asbestos-related diseases, and at the outset it often is impossible to diagnose which of the persons exposed to asbestos will eventually contract a disease. As the district court found, "the reaction of persons exposed to asbestos dust is highly individual and * * * not all persons exposed contract a disabling injury." 504 F.Supp. 1210, 1212; see also *Eagle-Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 682 F.2d 12 (1st Cir. 1982). Thus even persons who will eventually become ill may be unable to come into court immediately after exposure to asbestos, because at that time their illness is only a possibility.

Among the cases cited by Owens-Illinois, *Olson v. St. Croix Valley Memorial Hospital, Inc.*, 55 Wis.2d 628, 201 N.W.2d 63 (1972), comes closest to holding that a cause of action may accrue even though whether there will be harm remains speculative. In *Olson*, the plaintiff was given a transfusion of the wrong type of blood in 1962, which allegedly affected her ability to bear children. In 1966, she gave birth to a child that lived for only seven hours, and in 1969, she delivered a stillborn child. The plaintiff did not bring her action based on the negligent transfusion until 1970. The Wisconsin Supreme Court held that the action was barred by the three-year statute of limitations, the majority finding that the injury occurred at the time of the transfusion and a two-Justice concurrence finding that the injury occurred when the first child died.

The transfusion of bad blood in *Olson* is similar to the inhalation of asbestos fibers in these cases because in each case the plaintiff's worst dàmages were realized subsequent to the foreign substance entering the body. But the transfusion in *Olson* did not initiate a progressive illness. If an injury occurred at all (the Wisconsin Supreme Court expressed some doubt since the plaintiff bore a third and healthy child in 1967, 55 Wis.2d at 634), it must have happened at the time the plaintiff received the faulty transfusion. The alleged injury occurred to the plaintiff's *capacity* to bear children, which, according to her complaint, was impaired at the time of the transfusion. Assuming that her inability to bear children was immediately diagnosable, the *Olson* plaintiff could have brought suit for her injury at any time within three years of the transfusion. In the instant case, the asbestos-caused injury ordinarily is not even diagnosable, let alone provable in court, until some undetermined time after the plaintiff's initial exposure to asbestos.

As noted above, a cause of action cannot accrue until "there exists a claim capable of present enforcement." *Barry v. Minahan*, 127 Wis. at 573, 107 N.W. 488. It would be most unfair to hold that the period of limitations had begun running before the plaintiff can possibly prove a cause of action, although as the *Olson* case demonstrates, the plaintiff's awareness of the injury is another matter. Moreover, the Wisconsin Constitution may prevent our construing the statute of limitations to cut off the plaintiff's right to sue for damages prior to a time when the plaintiff could prove the existence of an injury. See Wis.Const. art. 1, § 9 ("Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character * * * "); *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 393, 225 N.W.2d 454 (1975); *Rosenthal v. Kurtz*, 62 Wis.2d 1, 8, 213 N.W.2d 741 (1974). Accordingly, in cases where no as-

certainable damages occurred until some-time after the wrongful act of the defend-ant—primarily defective product cases—the Wisconsin Supreme Court has held that the period of limitations does not begin running until there are indeed damages. See, e.g., *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis.2d 314, 291 N.W.2d 825. (1980) (cause of action for neg-ligent installation of pipeline accrues when cathodic protection begins shorting); *Abra-mowski v. Wm. Kilps Sons Realty, Inc.*, 80 Wis.2d 468, 259 N.W.2d 306 (1977) (action for negligent home construction accrues when basement walls and foundation crack and cave in); *Hartford Fire Ins. Co. v. Osborn Plumbing & Heating, Inc.*, 66 Wis.2d 454, 225 N.W.2d 628 (1975) (action for negligent installation of heater accrues at time of fire); *Holifield v. Setco Indus-tries, Inc.*, 42 Wis.2d 750, 168 N.W.2d 177 (1969) (action for wrongful death accrues when defective grinding wheel explodes). Therefore we hold that the limitations peri-od does not necessarily begin at the time of plaintiff's exposure to asbestos and that the apparent premise of the district court's de-cision—that injury and exposure are simul-taneous—is incorrect.[2]

### III

The plaintiffs contend that merely suffer-ing diagnosable damages is insufficient to commence the period of limitations. They argue that the period of limitations should not begin running until they know that they have been injured or, alternatively, until the injury in some noticeable way impairs their health so that they should know that they have been injured. The

plaintiffs apparently argued on behalf of an even stronger version of the "discovery rule" before the district court, viz., that the cause of action does not accrue until "a plaintiff knew or should have known that he had a compensable injury contracted as a result of exposure to asbestos dust." Order of January 9, 1981 at 2.

The defendants and third-party defend-ants except Owens-Illinois argue for what in most cases would be an earlier date, when the damages are "demonstrable" or "reasonably capable of medical diagnosis." Although we do not make specific findings on the matter, in most of the consolidated cases below plaintiffs apparently had a di-agnosable (often diagnosed) injury to their lungs many years before the illness signifi-cantly impaired their health and probably before the plaintiffs either knew the cause of their injury or that it would be compen-sable.

The Wisconsin Supreme Court has not decided a personal injury case involving an asbestos-caused or progressively disa-bling disease, but its other decisions indi-cate clearly that the plaintiff's actual knowledge that an injury has occurred or knowledge of the cause of the injury is irrelevant to when a cause of action has accrued. See e.g., *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis.2d 314, 324, 291 N.W.2d 825 (1980) ("The injury need not * * * be of such magnitude as to identify the causal fac-tor"); *Peterson v. Roloff*, 57 Wis.2d 1, 203 N.W.2d 699 (1973); *Olson v. St. Croix Val-ley Memorial Hospital, Inc.*, 55 Wis.2d 628, 201 N.W.2d 63 (1972). Similarly, whether a

**2.** Absent Wisconsin judicial precedent, the dis-trict court's decision that a cause of action accrues upon the plaintiff's last exposure to asbestos could be justified because the time of last exposure can be determined more certainly than any of the other suggestions and because that determination would require no expert medical witnesses. *Cf. Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1230–1231 (6th Cir. 1980) (dissent's suggestion that asbestosis be deemed to occur ten years from date of first exposure), certio-rari denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650. Such linedrawing, however, is

best left to either the Wisconsin legislature or the Wisconsin Supreme Court. See *Peterson v. Roloff*, 57 Wis.2d 1, 7, 203 N.W.2d 699 (1973) ("Because of the numerous cases in which the present three-year requirement for commenc-ing an action by a party who is the victim of medical malpractice is too short, we strongly recommend to the legislature that the basic three-year statute for negligence actions due to medical malpractice be amended."); Wis.Stat. § 893.55 (effective July 1, 1980) (ameliorating the statute of limitations in medical mal-practice cases).

plaintiff knows that an injury is compensable under some legal theory has not been a factor in deciding when the cause of action accrues. *Cf. Boehm v. Wheeler*, 65 Wis.2d 668, 679–680, 223 N.W.2d 536 (1974) (plaintiff's ignorance of legal malpractice does not toll statute of limitations). The Wisconsin Supreme Court has hinted that its prior cases preclude it from adopting a discovery rule "in [medical] malpractice cases only," *Rosenthal v. Kurtz*, 62 Wis.2d 1, 13, 213 N.W.2d 741 (1974); however, the Court's practice has been to defer any such extension of the limitations period to the Wisconsin legislature. *E.g., Rod v. Farrell*, 96 Wis.2d 349, 354–355, 291 N.W.2d 568 (1980); *Peterson v. Roloff*, 57 Wis.2d 1, 7, 203 N.W.2d 699 (1973). At about the same time that it adopted a discovery rule for medical malpractice cases, the Wisconsin legislature considered and rejected a discovery rule to apply in all types of personal injury actions. 1979 Assembly Bill 327 (introduced March 21, 1979; defeated Nov. 11, 1979).[3] We doubt that the Wisconsin Supreme Court would now contradict the legislature's apparent resolution of the question. See *Boehm v. Wheeler*, 65 Wis.2d 668, 680, 223 N.W.2d 536 (1974) (considering legislature's failure in 1973 to enact discovery rule statutes as a reason not to adopt a judge-made discovery rule).[4]

The harder question is what quantum of damages must be sustained for the cause of action to accrue. Specifically, we must decide whether the cause of action accrues only when the disease has progressed to the stage that it actually impairs the plaintiff's wellbeing or otherwise is noticeable to the plaintiff, or instead when the plaintiff could

first prove that he has the disease through medical diagnosis. As noted above, the plaintiffs argue for a time when the plaintiff suffers some noticeable impairment, while the defendants (except Owens-Illinois) argue for when the disease is first diagnosable. In the medical malpractice cases decided prior to enactment of the new discovery rule statute, the Wisconsin Supreme Court stated that the limitations period begins when the injury was diagnosable without regard for any noticeable impairment to the plaintiff. We believe that the Wisconsin Supreme Court would apply that standard here also.

For example, in *Olson, supra,* the plaintiff was deemed to have suffered an injury at the time she received the faulty transfusion since it was then that her ability to bear children allegedly was affected. Although the plaintiff was not noticeably impaired until she lost her first child (and she did not in fact notice the impairment until she lost a second child), the Court's opinion implied that if she could prove her cause of action at all, it was provable at the time of the transfusion. The losses of the plaintiff's children were "consequential injuries * * * [which] had no effect on a cause of action already accrued." 55 Wis.2d at 634, 201 N.W.2d 63. Similarly, in *McCluskey, supra,* the plaintiff suffered no impairment from the hemostat lodged in his abdomen and did not learn of its presence until x-rayed in the course of an unrelated examination. Nevertheless, the Court held that the cause of action accrued at the time the hemostat was left in the plaintiff's abdomen. 31 Wis.2d at 250–251, 142 N.W.2d 787.

---

**3.** The defeated bill would have provided, in pertinent part: "an action to recover injuries to the person shall be commenced within 3 years after the person injured discovers the injury or reasonably should have discovered the injury whichever first occurs, or be barred."

**4.** The plaintiffs cite cases from other jurisdictions, in particular *Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155 (8th Cir. 1975) (construing Minnesota law), in order to suggest that a discovery rule is better law. However, the result we have reached is strongly entailed by the Wisconsin precedents and therefore we do

not need to consider the balance struck by other states between the policies "of discouraging stale and fraudulent claims, and * * * of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained." *Peterson v. Roloff*, 57 Wis.2d at 6, 203 N.W.2d 699. Nor is a discovery rule mandated apparently by various provisions of the federal Constitution. See *Steinhardt v. Johns-Manville Corp.*, 54 N.Y.2d 1008, 446 N.Y.S.2d 244, 430 N.E.2d 1297 (Ct. App.1981), certiorari denied, —— U.S. ——, 102 S.Ct. 2226, 72 L.Ed.2d 840.

The plaintiffs' strongest argument that there is no injury until they are noticeably impaired comes from a recent property damage decision authored by Justice Coffey now Circuit Judge Coffey of this Court, *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis.2d 314, 291 N.W.2d 825 (1980). That case involved a suit by the Wisconsin Natural Gas Company to recover damages caused by the negligent installation of a 14-mile natural gas pipeline. The Gas Company alleged that the contractor was negligent in failing to provide adequate support for the underground pipeline in light of anticipated shifting soil conditions, and that the engineering inspector failed properly to supervise the installation. The damage to the pipeline due to the faulty installation occurred gradually and was evidenced by the increasing occurrence of "casing shorts" which knocked out portions of the pipeline's electrical anti-corrosion mechanism. The plaintiffs in the instant cases point out that the Wisconsin Supreme Court did not hold that the Gas Company's cause of action accrued at the time that the first casing short occurred, which would have barred the action under the applicable statute of limitations. Rather, the Court found "that the discovery of a single casing short, in a relatively new pipeline, is not 'sufficiently significant' to alert the Gas Company to the possibility of major defects throughout the entire 14 mile pipeline." 96 Wis.2d at 325, 291 N.W.2d 825 (quoting *Tallmadge v. Skyline Construction, Inc.*, 86 Wis.2d 356, 359, 272 N.W.2d 404 (Ct.App.1978)). Based on that language, the plaintiffs here contend that their causes of action accrued only "when the evidence of injury * * * [became] sufficiently significant to alert the injured party to the possibility" of an asbestos-created disease. 96 Wis.2d at 324, 291 N.W.2d 825 (quoting *Tallmadge*, 86 Wis.2d at 359, 272 N.W.2d 404).

In any event, it is irrelevant whether the evidence of injury leads the plaintiff to realize that the disease was caused by exposure to asbestos. The portion of the *Tallmadge* opinion quoted by the Wisconsin Supreme Court continues: "The injury need not, however, be of such magnitude as to identify the causal factor." *Id.* But a test that looks for evidence of an injury "sufficiently significant to alert" plaintiffs might be appropriate in the instant cases *provided* the plaintiffs here were as diligent in searching for disease as the Gas Company had been in searching for damage to its pipeline. Justice Coffey began his opinion with a detailed statement of the Gas Company's efforts to protect its pipeline and detect malfunctions:

Construction of the pipeline was commenced in January, 1968 and became operational in September of the same year. Two months thereafter, in November, shortly after the pipeline was operational, the Gas Company conducted a survey to test for possible corrosion. Following this survey, in early 1969 (March or April), the utility retained the Harco Corporation (Harco), a corrosion engineering firm specializing in cathodic protection, to conduct a more extensive corrosion survey and to assist in developing a system of cathodic protection on the pipeline. In May of 1969 Harco located one casing short at a street crossing but concluded that the pipeline could be cathodically protected from corrosion "with little difficulty." Harco then designed and installed a system of cathodic protection to prevent further corrosion to the pipeline. In January, 1970, after the cathodic protection process was in operation, Harco recommended a yearly survey of the system. The Gas Company, following Harco's recommendation, conducted a second survey in early 1971, and after finding a number of casing shorts, determined that the pipeline could no longer be considered under cathodic protection. As a result of their findings in the 1971 survey, the Gas Company hired a second engineering and consulting firm, the Hinchman Company (Hinchman), to conduct a comprehensive survey of the entire 14 mile pipeline installed less than three (3) years earlier. Hinchman discovered six (6) "shorts" * * and recommended that the utility clear and repair the underground casing shorts

thus necessitating extensive excavation. Hinchman recommended that the utility excavate and repair as opposed to increasing the electrical current of the cathodic protection process because the current was already operating at its maximum level.

As a result of Hinchman's report and recommendation, the Gas Company embarked upon an extensive program of repair and maintenance of the pipeline to clear the "shorts."

96 Wis.2d at 318–319, 291 N.W.2d 825 (footnotes omitted). Since all the evidence of damage was uncovered by or quickly turned over to the expert pipeline-injury detectors hired by the Gas Company, Justice Coffey's standard of what is sufficient to alert the Gas Company to the existence of an injury is essentially the same as what reasonably was diagnosable as an injury.

Justice Coffey went on to find that casing shorts were " 'quite a usual phenomena' in the industry" and are often caused by factors other than the improper installation of the pipeline. 96 Wis.2d at 325, 291 N.W.2d 825. Moreover, to distinguish between a random short and one that portended a serious defect, the Gas Company would be required to dig up the whole length of the pipeline. But Justice Coffey held "[i]t is unreasonable for the defendants to expect or this court to require the plaintiff, the Gas Company, to excavate the entire 14 miles of pipeline less than one year old in May of 1969 at a cost in excess of $400,000 based on their discovery of one single casing short." *Id.* Therefore, "the Gas Company did not actually suffer an injury until a number of 'casing shorts' rendered the cathodic protection process ineffective and necessitated an extensive excavation and repair program to clear the pipeline of the shorts." *Id.*

Analogously, if the plaintiffs here had hired experts in the field of lung care and the experts found symptoms that with the benefits of hindsight might have indicated the presence of a disease but were dismissed at the time as insignificant, the plaintiffs would have a strong argument

that no provable cause of action had yet accrued. Moreover, the *Wisconsin Natural Gas* case indicates that a cause of action will not have accrued if a plaintiff failed to undergo expensive or risky medical processes that might have detected the disease but were unreasonable under the circumstances. The appropriate standard for when a cause of action accrues, however, depends on what reasonably should "alert" the plaintiff only if he has been assiduously attentive to his health. We thus regard *Wisconsin Natural Gas* to be an exceptional application of the more general rule that the cause of action accrues when the asbestos-caused disease becomes diagnosable— *e.g.*, provable by medical evidence in court—a standard that ordinarily is independent of what occurrences might attract the plaintiff's attention.

## IV

The rule that we believe would be adopted by the Wisconsin courts is quite harsh. As noted above, it appears that most of the plaintiffs had a diagnosable disease more than three years before they brought suit against the various defendants. We can only hope that the Wisconsin or federal legislatures will enact some measure to compensate these plaintiffs and others like them who are victims of a product that the consuming public for many years wanted manufactured. The consuming public paid a portion of the cost of manufacturing asbestos insulation in the form of its purchase price. The rest of the cost has been paid by the plaintiffs with their health.

We remand to the district court for further proceedings consistent with this opinion.