**In the Matter of: Lorraine GRYZYNGER, Debtor.**

**Lorraine GRYZYNGER, Plaintiff,**

v.

**Donald D. WARREN, Defendant.**

**No. 83–C–156.**

United States District Court,
W.D. Wisconsin.

April 29, 1983.

J. Thomas Haley, Madison, Wis., for plaintiff.

Patricia M. Gibeault, Brynleson, Herrick, Gehl & Bucaida, Madison, Wis., for defendant.

## MEMORANDUM AND ORDER

JOHN C. SHABAZ, District Judge.

In this appeal from the Bankruptcy Court of the Western District of Wisconsin, Judge Robert Martin presiding, the debtor, Lorraine Gryzynger, seeks reversal of the decision of Judge Martin concerning a land contract entered into between Gryzynger and one Donald Warren.

It appears that Gryzynger (hereinafter, the plaintiff) was the owner of an apartment building which was encumbered by a mortgage. In September, 1981, a judgment

of foreclosure was entered on the mortgage and plaintiff was given six months to redeem the property. She sought to redeem the property by sale to another party within the redemption period. In October, 1981, she accepted the offer to purchase of Donald Warren (hereinafter, the defendant). The agreement provided that plaintiff would take a land contract at $42,000 "due and payable within 30 days of closing with a 30 day extension if needed." The closing took place on November 4, 1981, and the land contract provided as follows:

> The entire purchase price shall be due and payable on or before December, 1981, provided however, if for any reason Purchaser cannot obtain an FHA mortgage within that time period, the entire purchase price shall be paid on or before January ___, 1982. Further provided, that Purchaser shall be required to pay all necessary expenses incurred for the repair, maintenance or leasing of the Property.

The contract further provided for no downpayment and 0% interest. It also disclosed the existence of two liens, one of which was subject to a judgment of foreclosure, which were to be satisfied by the seller. The contract further provided that, if defendant remained in default for 60 days, plaintiff could pursue her legal remedies.

It appears that defendant failed to obtain financing so the land contract was not performed. However, defendant remained in possession of the property at least until the filing of a complaint in Dane County Circuit Court. Defendant had not personally applied for FHA financing. He had apparently attempted to arrange a sale of the land contract to third parties who would qualify for such financing, and finally offered to close the contract on March 22, the offer being made on March 19, on or about the same day plaintiff filed a complaint against defendant in Dane County Circuit Court, seeking, among other things, ejectment and damages. Plaintiff refused the offer and, in order to forestall a foreclosure sale on March 23, 1982, plaintiff filed bankruptcy on March 22, 1982. The land contract case in Circuit Court was removed to Bankruptcy Court.

On cross motions for summary judgment in the adversary proceeding, Judge Martin entered judgment for the defendant on plaintiff's first and fourth claims. The Judge viewed the first claim as one for ejectment and determination of title; the fourth as one for damages for misrepresentation and bad faith. In that defendant had subsequently surrendered the premises, the ejectment claim was deemed moot. As for the question of determination of title, Judge Martin stated as follows:

> We must note that there has been no foreclosure sought in this adversary proceeding and therefore no issue which might arise solely in relation to the foreclosure of the land contract between Gryzynger and Warren or the current status of title to the property are considered herein.

Plaintiff moved for reconsideration of the Court's decision with regard to the above quoted statement. A hearing was held on the motion, at which time the motion was denied. Judge Martin stated that he was confident that his decision was *res judicata* as to any dispute or cloud on the title of the plaintiff to the property in question.

## MEMORANDUM

On appeal, plaintiff argues that the Bankruptcy Court's decision was in error in dismissing her first and fourth claims.

■ Insofar as the first claim was an action for ejectment, the decision was entirely correct. It is evident that the action is moot once the property is surrendered to the plaintiff in such an action. In *Carmichael v. Argard,* 52 Wis. 607, 9 N.W. 470 (1881), the Court stated that an action for ejectment cannot be maintained against a party not in possession and considered the proposition so obvious that authority need not be cited.

■ Similarly, to the extent that the fourth claim is grounded on the tort of bad faith growing out of a breach of contract, the Bankruptcy Court's dismissal of the

claim was correct. The tort has been recognized in Wisconsin under three circumstances: a violation by an insurance company of its duty to the insured to settle the claim of a third party and avoid excess liability which would have to be paid by the insured. *Hilker v. Western Automobile Insurance Co.*, 204 Wis. 1, 231 N.W. 257, 235 N.W. 413 (1931); a violation by an insurance company of its duty of good faith to a claimant under a worker's compensation policy. *Coleman v. American Universal Insurance Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979); and a violation by an insurance company of its duty to its insured to pay the reasonable claims submitted by the insured, *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978).

It is the third type of claim mentioned above which most resembles plaintiff's claim here. Plaintiff asserts a violation of defendant's good faith obligation undertaken by contract. It is clear that the tort has been recognized only in cases alleging breach of insurance contracts. The Court believes this is so, not because insurance bad faith cases are the only ones to reach the Supreme Court, but because the existence of the tort in Wisconsin depends upon the kind of relationship present in the context of insurance. In another case which refused to extend the tort to the insurance company's obligation to third party claimants, the Court stated:

> The heart of the tort recognized in *Anderson* is the fiduciary relationship between the insurer and the insured and the insurer's breach of the duty of good faith and fair dealing implicit in every contract.

*Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 261 (1981). This Court notes the conjunctive nature of the statement above. Even if plaintiff's complaint sufficiently pleads a breach of duty of good faith which is implicit in every contract, she cannot plead the fiduciary relationship between the insurer and an insured.

Nor is plaintiff helped by the language of Justice Abrahamson's concurring opinion in *Kranzush*, 307 N.W.2d 271–276. It is asserted there that dependence on the existence of the fiduciary relationship begs the question and that the real answer should turn on a public policy analysis. Aside from questions concerning the propriety of this Court drastically expanding tort liability in Wisconsin on public policy grounds, the Court declines to do so because the policy question should be decided against plaintiff's position. To recognize a tort of bad faith under the circumstances of this case would be to invite a bad faith claim in every breach of contract case. In *Anderson* it was pointed out that an insurer could be found liable only when it intentionally denied a claim without a reasonable basis. 271 N.W.2d at 377. Does the intentional breach of a non-insurance contract require the same remedy? This Court does not believe so, especially since the punitive damages which are part of the claim here would not serve any deterrent function.

■ The plaintiff's complaint also sounds in the tort of fraudulent misrepresentation. The misrepresentations claimed by plaintiff are encompassed by the promises of the defendant to obtain financing. Plaintiff characterizes these promises as misrepresentations of defendant's intent to perform under the contract. The Court must conclude that these allegations may be sufficient to state a claim, but affirms the Bankruptcy Court's judgment.

The elements of fraudulent misrepresentation under Wisconsin law were delineated in *Federal Deposit Insurance Corp. v. Lauterbach*, 626 F.2d 1327, 1334 (7th Cir.1980):

> First, there must be a false representation; second, it must be made with intent to defraud and for the purpose of inducing another to act upon it; and third, such other person must rely on it and be induced to act, to his injury or damage.

*Goerke v. Vojvodich*, 67 Wis.2d 102, 226 N.W.2d 211, 214 (1975). See also *McCluskey v. Thranow*, 31 Wis.2d 245, 142 N.W.2d 787, 791 (1966). In general, the false representation must relate to the present or pre-existing events or facts and may not be merely a prediction of future events or an unfulfilled promise.

See *Hartwig v. Bitter,* 29 Wis.2d 653, 139 N.W.2d 644, 646 (1966). A promise may be actionable where the promisor has a present intent not to perform and a prediction may constitute fraud where the predictor is aware of present facts incompatible with the prediction or opinion. *Id.* 139 N.W.2d at 647. (Emphasis supplied.)

The Court views the decision of the Bankruptcy Court on this issue to hold that plaintiff merely had a right to depend on the "hope" that defendant would obtain financing. Judge Martin apparently depended on the sufficiency of the allegations of the complaint to ground his decision, and specifically on the allegation that defendant had expressed his hope to obtain financing. This, Judge Martin stated, was insufficient to state a misrepresentation claim.

The Court would agree but for an additional allegation in the complaint that "defendant did not intend to apply for an FHA loan ..." Under the emphasized language from the above quotation which depended on *Hartwig,* a claim would be stated. However, the land contract itself gave defendant alternative methods to perform. He could get FHA financing within 30 days, or he could otherwise perform within 60 days. The fact that he failed to perform altogether does not make his promise an intentional misrepresentation. He chose one of two alternative methods to perform and is answerable in contract damages. The fact that he did not choose the other method of performance is of no significance. Given the language of the contract, plaintiff could not, and did not, allege an intent not to perform; she specifically did allege, in paragraph 10 of the third claim in the original complaint, that plaintiff intended to perform the contract in a manner not forbidden by the contract. She had no right to expect that plaintiff would get FHA financing, and could not rely on him to do so since he could perform the contract in any manner he chose. She would state a claim only if the only method that defendant could perform was to obtain FHA financing.

This Court must therefore conclude that plaintiff's complaint fails to state a claim for misrepresentation, albeit on slightly different grounds than the Bankruptcy Court.

Plaintiff, in her reply brief, suggests that her fourth claim is one for consequential contract damages as well as damages for the torts of misrepresentation and bad faith. In view of Judge Martin's clear statement that the claim was a tort-based action, and plaintiff's failure to raise this view of the complaint on reconsideration, the Court must conclude that the issue is one raised for the first time on appeal. Nor can this Court read into the allegations of the fourth claim anything resembling a claim for consequential contract damages.

■ Finally, the Court is compelled to conclude that the Bankruptcy Court's decision regarding the plaintiff's quiet title action was in error.

It appears from Judge Martin's initial decision that he concluded that a determination of title could not be had without going through a foreclosure action. And, after the hearing on the motion for reconsideration, it appears that the Judge concluded that plaintiff's title was either not under a cloud from the breached land contract, or, more probably, that his decision was determinative of title in the plaintiff vis a vis the defendant, thus negating a need to enter judgment to that effect.

This Court is unaware of, and has been directed to no authority for the proposition that a foreclosure action must precede a quiet title action. Further, there is sufficient reason for a land contract vendor to seek quiet title after a default. In *MacDonald and DeWitt,* 1 Wisconsin Practice, § 317, as cited by plaintiff, it is stated:

Unless the Court's decree in an ejectment action recites that the purchaser's equities are foreclosed, an attorney for a prospective purchaser might object to the title and insist on either a quit claim deed from the original purchaser and his wife or a quiet title action.

In order to foreclose this possibility, the commentators recommend that the prayer for relief in an ejectment action also ask the Court to declare quiet title.

Furthermore, in listing the remedies to the vendor after a default in a land con-

**996**

tract, the Supreme Court of Wisconsin stated:

> He may declare the contract at an end, and in the event the equitable interest of the purchaser is insignificant, that equitable right under the contract may be removed in a quiet title action as a cloud on the title of the legal owner. *Oconto County v. Bacon,* 181 Wis. 538, 195 N.W. 412 (1923).

*Kallenbach v. Lake Publications Inc.,* 30 Wis.2d 647, 142 N.W.2d 212, 214 (1966). Having declared the contract at an end, and having requested both ejectment and quiet title, the Court sees no reason why, when plaintiff's request for one of these remedies becomes moot, she is somehow to be denied the other. In the days before the joining of equity and law, that might have been a problem. It should not be one any longer.

Defendant's argument in opposition to the appeal in this regard seems to be based entirely on the sufficiency of the complaint to state a quiet title action. Citing Wis. Stats. § 841.02, defendant claims that the complaint must fully describe plaintiff's interest in the property and how it was acquired. Plaintiff did not do so, but argues that compliance with the statute is not necessary under the type of remedy chosen by her.

The Bankruptcy Judge did not base his decision on the sufficiency of the complaint to state a claim for quiet title. Accordingly, that issue is not properly before this Court.

However, the pleading requirements of both state and federal courts, Rule 8, Federal Rules of Civil Procedure, and the almost identical Wis.Stat. 802.02, appear to have been met by the complaint in this action. It is reasonably clear that plaintiff seeks to remove a cloud on the title to the real estate so it can be transferable. The land contract is that cloud, and defendant is the party who is able to have it removed. Obviously, this action cannot provide plaintiff quiet title as to all possible claimants who have not been named, but there appears to be no reason why she cannot obtain a resolution of defendant's adverse claim.

The Court will not order the entry of judgment in favor of the plaintiff on her quiet title cause of action, although there appears nothing in the record to preclude this relief; nor can the Court perceive those reasons for the defendant's resistance. He has already surrendered the premises and has not appealed the monetary award provided plaintiff on her second claim. Nevertheless, the record before this Court could very well be incomplete, and the plaintiff may not have presented all the necessary evidence justifying judgment against this defendant. The Bankruptcy Court's denial of judgment amounts to a dismissal of plaintiff's claim on the pleadings.

The judgment with respect to the quiet title action against defendant will be reversed and remanded for further proceedings.

Accordingly,

### ORDER

IT IS ORDERED that the decision of the Bankruptcy Court of the Western District of Wisconsin in the above entitled action is AFFIRMED IN PART and REVERSED IN PART and REMANDED for proceedings consistent with the above opinion.