Stark and wife, Plaintiffs and Respondents, v. Gigante (Joseph L.), Defendant and Appellant: Gigante (Jean), Interpleaded Defendant and Respondent.

*May 2—June 6, 1961.*

For the appellant there were briefs by *Marth & Marth* of West Bend, and oral argument by *William J. Marth*.

For the respondents Stark there was a brief by *Frank, Karl & Hiller,* attorneys, and *Daniel J. Weiss* of counsel, all of Milwaukee, and oral argument by *Herbert M. Hiller*.

For the respondent Jean Gigante there was a brief by *Habush, Gillick, Frinzi & Habush,* attorneys, and *Robert L. Habush* of counsel, all of Milwaukee, and oral argument by *Robert L. Habush*.

MARTIN, C. J.    It is agreed by the parties that plaintiffs may have judgment of foreclosure unless the defense of fraud and duress in procuring delivery of the note and mortgage to Jean Gigante is sustained by the court.

Appellant contends Jean was guilty of fraud and false swearing, placing great emphasis on the falsity of her statements under oath and in her answer and counterclaim in the annulment suit. As the trial court pointed out, it was obvious that the answer was fraudulent and that both parties

knew it was. Under those facts, which are undisputed, the essential element of reliance on the false representation is absent from appellant's proof. The rule is stated in *International Milling Co. v. Priem* (1923), 179 Wis. 622, 624, 192 N. W. 68:

"To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage."

Appellant testified that when he first read the answer he knew it was false; that both he and Jean knew the date of his divorce from his first wife and knew that their marriage took place prior to the expiration of one year thereafter; that his attorney, before their marriage, advised them both that the proposed marriage would be in violation of Wisconsin law. He cannot now maintain his action on the basis of representations he knew to be false. With full knowledge of all the material facts, he cannot say he was induced to act in reliance on her false statements. See *Benz v. Zobel* (1949), 255 Wis. 542, 39 N. W. (2d) 713.

There is the further contention that appellant was coerced into executing the stipulation for division of property and the note and mortgage by Jean Gigante's threat of a contested trial, the expense thereof, and the "risk" of a property division which the court might make. It is not duress to institute or threaten to institute legal action. 17A Am. Jur., Duress and Undue Influence, p. 580, sec. 18; *Roelvink v. Milwaukee* (1956), 273 Wis. 605, 79 N. W. (2d) 106. Nor can we accept the explanation made by appellant in oral argument that he feared Jean Gigante would commit perjury if the issues raised by her counterclaim were tried.

Moreover, appellant testified he signed the stipulation for division of property of his own free will, based on advice

of counsel. It is difficult to see how he was coerced into signing the documents when he was at all times represented by his attorney who presumably had as full knowledge of the material facts as he did and whose counsel took those facts into consideration.

"To do justice between the parties is the object of a court of equity." *Rainer v. Holmes* (1956), 272 Wis. 349, 352, 75 N. W. (2d) 290.

Appellant testified that Jean worked in his business throughout their six years of marriage and received no salary. During those years the business grew and produced for the appellant an annual salary of $25,000. Jean Gigante testified she managed the West Bend business during the year appellant was ill. While appellant urges that the court should have disregarded her testimony as to her contribution to the business, his testimony largely corroborates hers in that respect and also with respect to the assets acquired during their marriage—six cars owned by the business; two, including a Cadillac, owned by appellant; household furnishings worth three to four thousand dollars; a home in which the parties owned an equity of over $27,000; a large life insurance policy. There is no question but that this accumulation of assets was the result of her efforts as well as his. Although appellant attempted to minimize the importance of Jean's contribution to the success of the business, he admitted that she had such knowledge of it that it was of value to him to obtain her agreement in the settlement that she would refrain from competing with his business.

The evidence shows that the parties lived as husband and wife for six years; both worked in the appellant's business and contributed equally to its success and to the acquisition of the assets with which the division-of-property settlement dealt. In the settlement Jean Gigante was required

to refrain from competing with the appellant for over three years, which he testified was a valuable consideration to him; in addition, appellant received the real estate, the household goods, and the business. Jean Gigante received the note and mortgage in excess of $8,200 (the excess, being to protect her from income-tax liability, is not material here). Appellant makes no allegation that Jean failed to live up to her agreement not to compete. In the relief prayed for in his cross complaint he seeks to deprive her of the benefits she received under their agreement while retaining the benefits which inured to him.

*By the Court.*—Judgment affirmed.

DIETERICH, J., took no part.