WERLEIN, Respondent, v. WERLEIN, Appellant.

*March 4—March 30, 1965.*

For the appellant there was a brief by *Fugina, Kostner &amp; Ward* of Arcadia, and oral argument by *La Vern G. Kostner*.

For the respondent there was a brief by *Whelan, Morey & Morey* and *Randall E. Morey,* all of Mondovi, and oral argument by *Randall E. Morey.*

FAIRCHILD, J.  1. *The division of defendant's net worth.* Defendant's debts (excluding the amount owed Esther) amounted to $29,037.96. Intangible assets had a value of $6,354.18. There was conflicting testimony with respect to the value of the farm and tangible personal property. Plaintiff's witness Rockwell made an appraisal in April, 1964, but was unable to give a very satisfactory opinion as to changes in value between that date and the date of trial in September, 1964. Defendant's witnesses Winsand and Garaghan made an appraisal July 13 and 14, 1964, at $77,240. Garaghan testified that the market price of cattle had dropped by $5,000 after the date of appraisal. Winsand thought that the reduction was mainly in the value of dairy cows, about $30 each. There appear to have been 37 cows and the reduction would amount to $1,110. Francis Werlein testified that the value at date of trial was $65,000.

The net worth (excluding the amount owed Esther) was determined by the court at $51,473.38, approximately midway between the figures obtained by using the July appraisal and the $5,000 Garaghan adjustment ($49,556.22) and by using the July appraisal and the $1,110 Winsand adjustment ($53,446.22).

Werlein does not challenge the court's finding except to suggest that greater weight should have been given his own testimony as an expert. This point will be referred to in another connection.

Thus the property division allowed by the court represents a return to Esther of $9,754.84 furnished by her and a share amounting to $10,429.63, or 25 percent, of the remaining net worth of $41,718.54.

2. *Defendant's testimony with respect to value.* The court permitted defendant to state his estimate of the value of his property, both at the time of his marriage to plaintiff and at the time of trial but would "not allow the defendant to testify as an expert in his own behalf." Defendant had experience as an auctioneer and real-estate salesman which might well have qualified him as an expert on such values. Plaintiff's counsel concedes that there is no rule which would render a party incompetent to testify as an expert in his own case if otherwise found qualified.

Assuming, however, that the portion of the court's remark above quoted reflected an erroneous view of law, the opinion filed by the court shows that it did, in fact, consider defendant's testimony on values. The trial court could properly discount such testimony on account of defendant's obvious interest in the outcome. It does not clearly appear that the court failed to consider defendant's background and experience as well as the extent of his interest in the case in weighing his testimony with respect to value.

3. *Antenuptial agreement.* Defendant offered an antenuptial agreement executed by the parties August 22, 1960. It provided that at the death of Francis, all household furniture and equipment should be transferred to Esther and she should be paid $2,500 out of his estate. She agreed to renounce all claims of any sort in or against his estate. Paragraph six of the agreement provided that in the event of a separation or divorce, the transfer and payment already referred to should be made and be accepted by Esther as a final division of estate and in lieu of all alimony. Paragraph six also provided that if it be held void, the remainder of the contract should remain in force. Defendant concedes that it is the rule in this court that an antenuptial contract which purports to limit the husband's liability in the event

of separation or divorce is void as against public policy.[1] He asks us to re-examine and overrule this principle, suggesting that the proper considerations of public policy do not support the rule. We find, however, no persuasive reason for reconsideration of the rule.

Defendant argues further that in any event, the antenuptial agreement was admissible for the limited purpose as offered, of affecting the equities on a division of estate. Disregarding the objectionable paragraph six, it would seem proper that the agreement be considered as one of the circumstances of the parties insofar as it determined the rights which the wife would have in the husband's property at his death if the marriage had continued. In the instant case, however, we cannot conclude that the consideration of the agreement would have any appreciable weight in reaching an equitable division of the property where the husband is in good health and forty-six years of age. Under these circumstances, the fact that Esther would have been entitled, after presumably many additional years of marriage, to only $2,500 at his death would seem remote.

4. *The propriety of the division.* The division of property in a judgment of divorce "is peculiarly a matter resting in the discretion of the trial court, subject to such rules as have been established by this court for guidance in respect to the matter."[2] For principles to be applied in making a division of property, see *Wagner v. Wagner.*[3]

It is true that the marriage was of short duration. Defendant's net worth apparently decreased during the marriage

---

[1] *Fricke v. Fricke* (1950), 257 Wis. 124, 129, 42 N. W. (2d) 500; *Caldwell v. Caldwell* (1958), 5 Wis. (2d) 146, 155, 92 N. W. (2d) 356.

[2] *Gauger v. Gauger* (1914), 157 Wis. 630, 632, 147 N. W. 1075.

[3] (1961), 14 Wis. (2d) 23, 27, 28, 109 N. W. (2d) 507.

and an allowance has been made for alimony and support money in addition to division of estate. It is also true on the other hand that plaintiff will be required to devote her time for many years to the care of the three small children and must establish and maintain a home for them. Plaintiff contributed cash for the advancement of the family enterprise and land was purchased and added to the farm during the marriage. We find no abuse of discretion so far as the division of property is concerned in awarding plaintiff a return of her money and an amount equal to 25 percent of the remaining net worth.

5. *Consideration of farm losses and possible sale of farm.* The trial court found that defendant had an annual income of $8,000 to $10,000 a year as auctioneer and real-estate salesman. This finding is not disputed and in the light of it, we could not say that it was an abuse of discretion to require the defendant to make monthly payments totaling $325 for support money and alimony in addition to the $100 per month payment which he is obliged to make to his first wife. A problem arises because defendant devotes much of his time to activity off his farm, and operates the farm at a loss. The trial court's solution of this problem was to treat defendant's farming and his resulting losses as a matter of choice on the part of the defendant. If the farming operation be so considered, then the court could properly base its allowance of monthly payments upon defendant's income as auctioneer and real-estate salesman, and also require prompt payment of the award to the plaintiff even though that would probably compel the sale of the farm. The farm real estate was appraised at $39,465 and was subject to a mortgage of $11,800.

The loss or profit from farm operations and sale of livestock as disclosed by defendant's income-tax returns were as follows for the years in question :

| 1960 | Farm loss after claiming $1,806.61 for depreciation, and including sale of livestock | $1,734.04 |
| 1961 | Farm loss after claiming $2,046.51 for depreciation ($2,115.19, profit from sale of livestock not included) | 8,424.93 |
| 1962 | Farm loss after claiming $2,377.96 for depreciation ($7,541.37, profit from sale of livestock not included) | 3,978.73 |
| 1963 | Farm loss after claiming $2,338.76 for depreciation ($1,015.11, profit from sale of cattle not included) | 6,381.23 |

Upon reviewing all these factors, the majority of this court is concerned over the fact that the defendant has been a farmer for many years and the probability that there is a substantial direct relationship between his maintaining his activity as a farmer (including sales of livestock) and his ability to continue his earnings as an auctioneer and real-estate salesman. The majority of the court concludes that the failure of the trial court to give some consideration to the losses resulting from farm operation and to the probability that it is good judgment for defendant to continue his farming operation is an abuse of discretion. It is our opinion that this matter can best be resolved by further consideration by the county court, either extending more favorable terms to the defendant as to the time of payment of all or a part of the money awarded to plaintiff, with or without interest in the event of an extension, or reducing in some degree the monthly payments required of defendant, or granting some combination of these types of relief.

Defendant also appealed from the portion of the judgment which requires defendant to pay part of the attorney's fees of the plaintiff. No argument has been presented attacking this portion of the judgment.

*By the Court.*—The part of the judgment which fixes the time for payment of plaintiff's award on or before six months

from the date of the judgment; the part of the judgment fixing the amount of support money for the minor children; and the part of the judgment awarding alimony are reversed and the cause is remanded for further consideration not inconsistent with the opinion on file herein. In all other respects, the judgment is affirmed. No costs are to be taxed in this court.