IN RE the MARRIAGE OF: Mitzi NICHOLS, Petitioner-Appellant,

v.

James NICHOLS, Respondent-Petitioner.

Supreme Court

*No. 89–1985–FT. Argued January 24, 1991.—May 23, 1991.*

(Also reported in 469 N.W.2d 619.)

For the respondent-petitioner there were briefs by *Patricia L. Grove, Steven J. Rollins* and *Halling & Cayo, S.C.,* Milwaukee and oral argument by *Ms. Grove.*

For the petitioner-appellant there was a brief by *Thomas O. Mulligan* and *Kissack & Mulligan, S.C.,* Spooner and oral argument by *Thomas O. Mulligan.*

LOUIS J. CECI, J. This case is before the court on petition for review of a decision of the court of appeals, *In re Marriage of Nichols v. Nichols,* 156 Wis. 2d 503, 457 N.W.2d 492 (1990). The court of appeals reversed an order of the circuit court for Burnett county, Harry F. Gundersen, Circuit Judge, which denied Mitzi Nichols' (Mitzi) motion for an increase in maintenance. The circuit court denied Mitzi's motion on the grounds that it lacked jurisdiction to increase the amount of maintenance because the divorce judgment contained a clause incorporated from the parties' stipulation that maintenance was not subject to modification. The court of appeals held that the divorce judgment did not deprive the circuit court of the power to modify the award of maintenance.

Two issues are presented on this review. The first issue is whether a divorce judgment can preclude modification of maintenance. We hold that a divorce judgment can preclude modification of maintenance if one of the parties is estopped from seeking modification of maintenance. We further hold that a party to a divorce judgment is estopped from seeking an increase in maintenance if four conditions are met:[1] first, the parties freely and knowingly stipulated to fixed, permanent, and nonmodifiable maintenance payments and said stipulation was incorporated into the divorce judgment; second, the stipulation was part of a comprehensive settlement of all property and maintenance issues which was approved by the circuit court; third, the overall settlement, at the time it was incorporated into the divorce judgment, was fair, equitable, not illegal, and not against public policy; and, fourth, the party seeking release from the terms of the divorce judgment is seeking release on

[1]These conditions are derived from *Marriage of Rintelman v. Rintelman,* 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984).

the grounds that the court did not have the power to enter the judgment without the parties' agreement.

The second issue presented by this review is whether the stipulation in this case, as incorporated into the divorce judgment, is against public policy. We hold that the stipulation, as incorporated into the divorce judgment, is not against public policy.

The material facts relevant to this review are not in dispute. Mitzi and James Nichols (James) were divorced on November 21, 1978. The circuit court which granted the Nicholses' divorce incorporated into its divorce judgment a stipulation of the parties which settled all the issues in the divorce, including maintenance. The portion of the divorce judgment relevant to this review provided that:[2]

> Petitioner, James Nichols, shall pay the sum of $279.50 per month pursuant to the present Court Order until such time as the home of the parties is sold at which time the maintenance shall be increased to $450.00 per month of which $250.00 shall be allocated to maintenance for Mrs. Nichols and the balance shall be divided equally to the maintenance of the children . . ..
>
> *Said property division and maintenance payments of petitioner, Mitzi Nichols, to be considered as permanent and in lieu of any further or additional maintenance payments,* except said maintenance payments shall terminate upon remarriage of petitioner, Mitzi Nichols.

(Emphasis added.)

In December of 1987, Mitzi moved the circuit court for Burnett county to increase her maintenance pay-

---

[2]This portion of the divorce judgment is a verbatim recitation of the relevant portion of the parties' stipulation.

ments from $250.00 per month to $750.00 per month. The circuit court, by memorandum opinion dated March 20, 1989, ordered that maintenance be increased to $400.00 per month. However, the circuit court reversed itself by an order dated September 29, 1989, *nunc pro tunc* March 20, 1989, because it concluded that the portion of the divorce judgment set forth above deprived it of jurisdiction to review the award of maintenance made in the divorce judgment.

Mitzi appealed from the order entered on September 29, 1989, denying any increase in maintenance. The court of appeals held that the stipulation as incorporated into the divorce judgment did not deprive the circuit court of jurisdiction to review maintenance.[3] The court of appeals reasoned that under secs. 767.32(1) and 767.08(2)(b), Stats.,[4] maintenance is always subject to modification unless maintenance is waived. The court of appeals rejected James's argument that Mitzi is estopped from bringing a motion to increase maintenance under

---

[3]Accordingly, the court of appeals remanded with instructions to reinstate the circuit court's order of March 20, 1989, increasing maintenance to $400.00 per month.

[4]Section 767.32(1) provides in relevant part that:

> After a judgment providing for . . . maintenance payments . . . the court may, from time to time, . . . revise and alter such judgment respecting the amount of such maintenance . . . and the payment thereof . . ..

Section 767.08(2)(b) provides in relevant part that:

> The court in the action shall, as provided under s. 767.25 or 767.26, determine and adjudge the amount, if any, the person should reasonably contribute to the support and maintenance of the spouse or child and how the sum should be paid. This amount may be expressed as a percentage of the person's income or as a fixed sum. The amount so ordered to be paid may be changed or modified by the court upon notice of motion or order to show cause by either party upon sufficient evidence.

*Marriage of Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984). The court reasoned that the provision of the judgment providing that maintenance is not subject to modification violates public policy.

James petitioned this court for review of the decision of the court of appeals. We granted the petition.

Application of a statute to an undisputed set of facts is a question of law. *Kania v. Airborne Freight Corp.,* 99 Wis. 2d 746, 758, 300 N.W.2d 63 (1981). The decision to apply or not to apply the doctrine of estoppel set forth in *Rintelman* to an undisputed set of facts is a question of law. *In re Marriage of Ross v. Ross,* 149 Wis. 2d 713, 719, 439 N.W.2d 639 (Ct. App. 1989). Accordingly, we review the issues raised here independently and without deference to the circuit court or the court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

## WHETHER A DIVORCE JUDGMENT MAY PRECLUDE MODIFICATION OF MAINTENANCE

The court of appeals, relying upon *Dixon v. Dixon,* 107 Wis. 2d 492, 319 N.W.2d 846 (1982); *Fobes v. Fobes,* 124 Wis. 2d 72, 368 N.W.2d 643 (1985); and secs. 767.32(1) and 767.08(2)(b), Stats., held that a divorce judgment can never preclude a court from subsequently modifying maintenance unless maintenance is waived. We disagree.

As a general rule, maintenance is always subject to modification upon a showing of the requisite change in circumstances. Sections 767.32(1) and 767.08(2)(b), Stats. However, in *Rintelman,* we recognized an excep-

tion to the general rule that maintenance is always subject to modification when we held that a party is estopped from seeking modification of the terms of a stipulation incorporated into a divorce judgment[5] if

> both parties entered into the stipulation freely and knowingly, . . . the overall settlement is fair and equitable and not illegal or against public policy, and . . . one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

*Rintelman,* 118 Wis. 2d at 596.[6] The stipulation in *Rintelman* provided for nonmodifiable maintenance and met the criteria set forth above. Accordingly, we held

---

[5]Stipulations which are incorporated into a judgment are different from stipulations which the circuit court merely refers to and approves. As we explained in *Rintelman,* in the latter situation, " '[t]he arrangement is contractual, not a judicial determination, and therefore no more subject to change by the court than the terms of any other private agreement.' " *Rintelman,* 118 Wis. 2d at 592-93 (quoting *Miner v. Miner,* 10 Wis. 2d 438, 444, 103 N.W.2d 4 (1960)). However, in the former situation, "where the court adopts the parties' stipulation and incorporates it into its judgment, '[t]he award [is] . . . by adjudication and subject to modification.' " *Id.*

In the case at bar, the stipulation was incorporated into the divorce judgment. Accordingly, it is subject to modification unless the doctrine of estoppel set forth in *Rintelman* applies.

[6]The doctrine of estoppel set forth in *Rintelman*

> is not one based on the historic elements of the equitable doctrine. It is simply a rule of law which holds the parties to the terms of a stipulated divorce judgment in cases where the stipulation is fair and not violative of public policy, and where, but for the parties' agreement, the court could not have entered the judgment it did.

*Ross,* 149 Wis. 2d at 718-19.

that the payor spouse was estopped from seeking a modification in maintenance even though the payee spouse had remarried and sec. 767.32(3), Stats., provides that maintenance shall terminate upon motion of the payor spouse after the payee spouse has remarried. *Id.* at 596–98.

Thus, *Rintelman* stands for the proposition that the consent of the parties to nonmodifiable maintenance makes such a maintenance provision in a divorce judgment enforceable notwithstanding the provisions of secs. 767.32(1) and 767.08(2)(b) that maintenance is always subject to modification. The court of appeals held that Mitzi's consent to nonmodifiable maintenance is not enforceable because maintenance is always modifiable under the statutes. *Nichols,* 156 Wis. 2d at 507. Therefore, the holding of the court of appeals is directly contrary to our holding in *Rintelman.*

Furthermore, neither *Dixon* nor *Fobes* supports the court of appeals' conclusion that maintenance is subject to modification where the parties freely and knowingly consented to nonmodifiable maintenance. *Dixon,* unlike *Rintelman* and the case at bar, did not involve a stipulation of the parties. *See Fobes,* 124 Wis. 2d at 78. *Fobes* did involve a stipulation of the parties; however, the parties in *Fobes,* unlike the parties in *Rintelman* and the parties in the case at bar, stipulated to a form of maintenance[7] the court had the power to order without the consent of the parties. *Id.* at 80. The doctrine of estoppel recognized in *Rintelman* only applies to terms a court does not have the power to order without the consent of

[7]The circuit court ordered maintenance for a period of only three years or until the payee spouse remarried or died, whichever came first. *Fobes,* 124 Wis. 2d at 74.

the parties, such as nonmodifiable or permanent mainte-
nance. *Rintelman,* 118 Wis. 2d at 596.

Similarly, none of the cases Mitzi cites[8] to support
her position that stipulations do not bar modification of
maintenance involved a stipulation providing for
nonmodifiable maintenance. Accordingly, they do not
apply to cases such as *Rintelman* and the case at bar
which involve judgments that incorporated stipulations
providing for nonmodifiable maintenance.

Contrary to Mitzi's assertion, refusing to modify
maintenance in this case does not nullify secs. 767.32(1)
and 767.08(2)(b), Stats. If the legislature intended to
prevent parties from entering into nonmodifiable main-
tenance agreements, it would have expressly prohibited
such agreements. Historically, the legislature has explic-
itly stated when the terms of a statute may not be modi-
fied by contract. For example, the Fair Dealership Law
provides that its terms may not be modified by agree-
ment, sec. 135.025(3), Stats.; and the Uniform Commer-
cial Code as adopted in Wisconsin prohibits sales con-
tracts from substituting certain remedies for those
provided by the code, secs. 402.719(2) and (3), Stats.

██ Nothing in sec. 767.32(1) or in sec. 767.08(2)(b) pro-
hibits parties from entering stipulations which modify
the statutory provisions. Moreover, we expressly
approved of stipulations which provide that mainte-
nance is not subject to modification in *Rintelman.*
Therefore, we conclude that the court of appeals erred

---

[8]*Bahr v. Bahr,* 107 Wis. 2d 72, 318 N.W.2d 391 (1982); *In re
Marriage of Roellig v. Roellig,* 146 Wis. 2d 652, 431 N.W.2d 759
(Ct. App. 1988); *In re Marriage of Eckert v. Eckert,* 144 Wis. 2d
770, 424 N.W.2d 759 (Ct. App. 1988); and *In re Marriage of
Harris v. Harris,* 141 Wis. 2d 569, 415 N.W.2d 586 (Ct. App.
1987).

when it held that maintenance is always subject to modification unless maintenance is waived. A divorce judgment precludes subsequent modification of maintenance if the judgment incorporates a stipulation which fulfills the elements of estoppel set forth in *Rintelman*.

## WHETHER THE TERMS OF THE STIPULATION VIOLATE PUBLIC POLICY

The court of appeals held that Mitzi was not equitably estopped under *Rintelman* from seeking an increase in maintenance because the stipulation violated public policy for three reasons.[9] First, it is the policy of the

[9]In this court, Mitzi essentially relied upon the reasoning of the court of appeals. However, she did cite *Werlein v. Werlein*, 27 Wis. 2d 237, 133 N.W.2d 820 (1965), to support her position that a stipulation that limits one spouse's liability in a divorce is against public policy. Mitzi's reliance on *Werlein* is misplaced. The agreement in *Werlein* purported to limit maintenance without the approval of the court. The stipulation in the case at bar expressly recognized by its terms that it was subject to approval of the circuit court. Moreover, it is undisputed that the circuit court which granted the divorce found the stipulation to be reasonable and, therefore, approved it and incorporated it into its judgment of divorce.

Mitzi also contends that the stipulation in the case at bar does not fulfill *Rintelman*'s requirement that a stipulation must be entered into freely and knowingly. We reject this contention for four reasons. First, Mitzi offers no proof or argument to support her position other than a one-line assertion in her brief. Second, the record does not contain evidence, not even a self-serving affidavit, to support her position. Third, the plain language of the stipulation clearly and unambiguously states that the $250.00 per month maintenance is "in lieu of any further or additional maintenance payments," and Mitzi signed it herself. Fourth, it is undisputed that Mitzi was represented by counsel

107

state of Wisconsin that maintenance is always subject to modification unless it is waived. Second, acceptance of James's equitable estoppel argument could preclude review of maintenance in every stipulated divorce. Third, the maintenance provided by the stipulation is grossly inadequate given changes in Mitzi's income and health since the divorce. The court of appeals then concluded that the inadequacy of the maintenance distinguishes the case at bar from *Rintelman* where the payor spouse agreed to pay maintenance longer than he was required to do so under sec. 767.32(3), Stats. *Nichols,* 156 Wis. 2d at 507–09. We disagree.

The court of appeals cited *Dixon, Fobes,* and secs. 767.32(1) and 767.08(2)(b), Stats., to support its conclusion that a stipulation which provides that maintenance is not subject to modification violates public policy. We have already rejected this position, *supra* at 103–107, 469 N.W.2d at 623.

We also reject the court of appeals' assertion that acceptance of James's equitable estoppel argument could preclude modification of maintenance in every stipulated divorce. James's equitable estoppel argument does not rely solely on the fact that the divorce judgment incorporated his and Mitzi's stipulation. Rather, James argues that all the elements of estoppel set forth in *Rintelman* are present in this case, including the element that the party seeking relief from the stipulation does so on the

---

during the negotiation of the stipulation and that her counsel signed the stipulation. Under *Stark v. Gigante,* 14 Wis. 2d 13, 17, 109 N.W.2d 525 (1961), Mitzi cannot claim that she was misled because her attorney presumably had knowledge of all material facts. Furthermore, under *Kocinski v. Home Ins. Co.,* 147 Wis. 2d 728, 734–36, 433 N.W.2d 654 (Ct. App. 1988), *modified on other grounds* 154 Wis. 2d 56, 452 N.W.2d 360 (1990), Mitzi is bound to the stipulation by her attorney's signature.

grounds that the court could not have entered the judgment incorporating the terms of the stipulation without the consent of the parties.

Mitzi challenges the judgment on the grounds that the court which entered the divorce judgment did not have the authority to order that the maintenance is not subject to modification. However, not all stipulated divorces include terms the court could not include without the consent of the parties, such as a provision that maintenance is not subject to modification. For example, if the parties stipulate to a maintenance amount, but do not stipulate that maintenance is nonmodifiable, maintenance is still subject to modification. *See, e.g.,* the cases cited in n.8.[10] Accordingly, the court of appeals' assertion is incorrect.

Furthermore, we do not find persuasive the court of appeals' attempt to distinguish *Rintelman.* While there are some factual differences between *Rintelman* and the case at bar, the principle involved in both cases is the same: under certain conditions, a party may be estopped from seeking a modification of maintenance. In *Rintelman,* the payor spouse agreed to pay maintenance for the lifetime of his ex-spouse even though he had no legal obligation to do so under sec. 767.32(3), Stats., if his wife remarried. This court affirmed a denial of the payor spouse's motion to terminate maintenance because his ex-wife, the payee spouse, had remarried. We reached this conclusion because the payor spouse was

---

[10]In those cases, maintenance was modifiable because the stipulation incorporated into the judgment did not include a term which the court could not include by its own order, such as nonmodifiable maintenance. Accordingly, the doctrine of estoppel set forth in *Rintelman* did not apply to the stipulations in question. *Rintelman,* 118 Wis. 2d at 598.

estopped from seeking a modification in maintenance. In other words, we concluded that

> 'a person who agrees that something be included in a family court order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do.'

*Rintelman,* 118 Wis. 2d at 595 (quoting *Bliwas v. Bliwas,* 47 Wis. 2d 635, 639–40, 178 N.W.2d 35 (1970)).

In the case at bar, the payor spouse agreed to permanent and nonmodifiable maintenance of $250.00 per month. The stipulation of the parties provides that the maintenance payments and property settlement were given "in lieu of any further or additional maintenance payments." The property division was equal, except that James was made responsible for all of the couple's debt.

On the face of the stipulation, Mitzi received a benefit—one-half of the couple's assets, James's assumption of all of the couple's debt, and maintenance payments—in exchange for agreeing that maintenance would not be modifiable. Therefore, we conclude that Mitzi, like the payor spouse in *Rintelman,* is in a poor position to object to the court's including a provision in the divorce judgment that maintenance is not subject to modification. However, we note that a *quid pro quo* such as the one in the case at bar need not be shown in order for a stipulation to fulfill the requirements of *Rintelman. Id.* at 596.

We are not persuaded by the court of appeals' conclusion that the case at bar is distinguishable from *Rintelman* because the maintenance provided by the stipulation is grossly inadequate. In determining

110

whether a stipulation is fair, equitable, and not against public policy, we examine the settlement *as a whole. Id.*

The stipulation, as a whole, was fair, equitable, and not against public policy at the time the divorce judgment was entered. The modest maintenance award is reasonable in light of the fact that it is permanent and that the property division was unequal—James assumed all of the couple's debt and received only one-half of the couple's assets.

Mitzi does not argue that the terms of the stipulation violated public policy at the time the judgment was entered. Instead, she argues that the stipulation violated public policy because, without an increase in maintenance, she would be forced into seeking public assistance.

At the outset, we note that the record contains no evidence to support her assertion that she will be forced onto public assistance without an increase in maintenance. The record does not even contain a self-serving affidavit from Mitzi to support her assertion. Even the affidavits filed in support of her motion aver only that her needs have changed substantially since the divorce in 1978. However, even if we assume that her claim is true, we must reject her argument that the terms of the stipulation violate public policy.

As discussed previously, the terms of the stipulation were fair, equitable, and not against public policy at the time it was incorporated into the divorce judgment. Therefore, the only way we can conclude that the stipulation violates public policy is to hold that whether a stipulation is fair, equitable, and not against public policy must be reevaluated every time a party seeks relief from a nonmodifiable provision of a stipulation. We determine whether a stipulation is fair, equitable, and

not against public policy by taking into account the circumstances which existed at the time the stipulation was incorporated into the divorce judgment.

We refuse to reevaluate whether a stipulation is fair, equitable, and not against public policy 13 years after a divorce due to subsequent changes in the parties' circumstances for two reasons. First, modification is unfair to the payor spouse because he or she may not seek modification of maintenance under similar conditions. Second, modification will discourage the settlement of divorce cases.

Allowing Mitzi, the payee spouse, to seek relief from the stipulation would not be fair because a payor spouse cannot seek relief from nonmodifiable maintenance on the grounds of financial hardship which arises after the divorce under the court of appeals' holding in *Ross*.[11] In *Ross,* the divorce judgment incorporated a stipulation of the parties which provided for maintenance of $733.00 per month for 63 months. The stipulation as incorporated into the judgment also provided that maintenance was not subject to modification. After the divorce, the payor spouse suffered a significant decrease in income, while the payee spouse's income increased. *Ross,* 149 Wis. 2d at 714-15.

The payor spouse sought a decrease in maintenance based upon the changes in the parties' income since the

[11]The payments at issue in *Ross* were labeled "Section 71 payments" by the parties' stipulation. *Ross,* 149 Wis. 2d at 714-15. However, the *Ross* court concluded that the payments were a form of spousal support and, therefore, should be analyzed like nonmodifiable maintenance was analyzed in *Rintelman. Id.* at 716-17. Accordingly, the *Ross* decision is relevant to the case at bar.

divorce. The court of appeals affirmed the circuit court's denial of the payor spouse's motion. In so ruling, the court of appeals rejected the payor spouse's argument that enforcing the stipulation was unconscionable given the financial setbacks he had suffered since the divorce. *Id.* at 720. To support its conclusion, the court of appeals quoted with approval the opinion of the circuit court which, in dicta, rejected Mitzi's position in the case at bar.

> 'It's [entering into a stipulation with a nonmodifiable maintenance provision] a calculated risk, it's a gamble that each party [takes]. Unfortunately for Mr. Ross [the payor spouse] the gamble has not worked . . . to his advantage . . .. That's true in business as well as in family matters and the dice [have not] roll[ed] his way in this situation . . .. [But it] could cut . . . the other way. It could be that Ms. Ross [the payee spouse] is in desperate need of help and Mr. Ross is making a fortune and she would not . . . be able to come back to this Court and ask . . . me to continue the payments or increase [them] . . ..'

*Id.* The court of appeals decision in the case at bar directly contradicts the reasoning, if not the holding, of the court of appeals decision in *Ross.* Under *Ross,* James could not seek a reduction in maintenance if he lost all of his money in a bad investment and Mitzi won the lottery.[12] Similarly, Mitzi should not be allowed to seek an

---

[12]In this regard, the stipulation, like the stipulation in *Rintelman,* provides more maintenance than required by statute. Under sec. 767.32(1), Stats., James would be entitled to a reduction in maintenance if he had not entered into the stipulation and he proved that Mitzi's income had increased substantially. Therefore, it is incorrect to conclude that the stipulation in the case at bar drops Mitzi below a floor of support set by the statute. Rather, the stipulation sets a level of support which is reasonable,

increase in maintenance because, as the trial judge stated in *Ross,* the gamble of entering into the stipulation has not worked to her advantage. However, under the court of appeals decision in this case, Mitzi may seek an increase in maintenance if she shows financial need, and James must pay the maintenance set by the stipulation regardless of his financial condition.

■■■

The doctrine of estoppel set forth in *Rintelman* is equitable only if it applies to both payors and payees of maintenance. If payees may seek modification of nonmodifiable maintenance due to financial setbacks suffered since the divorce, but payors of maintenance may not do the same, the payor is denied the benefit of his or her bargain, while the payee receives the benefit of his or her bargain without risking the effects of what he or she agreed to in the stipulation.[13]

---

given the property settlement, and exposes both parties to the risk that future circumstances may make the stipulation a bad deal for him or her. As discussed above, the court of appeals decision is unfair because it destroys the mutuality of the risk involved in stipulations which provide that maintenance is not subject to modification.

[13]The court of appeals decision creates two unjustifiable inconsistencies. First, as discussed above, it treats payor spouses differently than payee spouses are treated under *Ross.* Second, it treats couples who enter into stipulations at the time of their divorce differently than couples who enter into postnuptial agreements are treated under *Button v. Button,* 131 Wis. 2d 84, 388 N.W.2d 546 (1986). Under *Button,* the substantive fairness of postnuptial agreements is determined at the time of the execution of the agreement and at the time of the divorce if circumstances have changed significantly since the execution of the agreement. *Id.* at 89. In contrast, the court of appeals decision subjects stipulations to scrutiny for fairness and equity forever. Neither inconsistency created by the court of appeals decision is supported by

Moreover, allowing the decision of the court of appeals to stand will discourage the settlement of divorce cases. The advantage of agreements providing that maintenance is not subject to modification is certainty and finality. If nonmodifiable maintenance is not really nonmodifiable, there will be no motivation for a payor spouse to enter into stipulations such as the agreements in *Rintelman, Ross,* and the one in the case at bar. Therefore, the decision of the court of appeals will discourage settlements, contrary to the public policy of this state.[14]

We recognize that enforcing provisions which provide that maintenance is not subject to modification may result in financial hardship. However, allowing modification will, as discussed above, cause more problems than it solves. Furthermore, allowing Mitzi to seek an increase in maintenance is inconsistent when, as she concedes, she could not seek an increase if the stipulation had provided for no maintenance.

Moreover, the divorce laws already provide sufficient protection against inadequate maintenance. For example, parties are free to reject nonmodifiable maintenance provisions, and parties to a stipulation providing that maintenance is not subject to modification are protected by the requirement that the circuit court approve a stipulation. *Schmitz v. Schmitz,* 70 Wis. 2d 882, 887,

---

public policy. Rather, as discussed above, the lack of finality that the court of appeals decision creates undermines the public policy of encouraging settlement of divorce cases.

[14]Section 1, ch. 105, Wis. Laws of 1977, provides in relevant part that "[i]t is the intent of the legislature . . . to promote the settlement of financial and custodial issues . . ." in divorce actions.

236 N.W.2d 657 (1975); *Ray v. Ray,* 57 Wis. 2d 77, 84, 203 N.W.2d 724 (1973).

In the case at bar, it is undisputed that the circuit court properly found the stipulation to be reasonable at the time it granted the divorce. Therefore, we conclude that the stipulation in the case at bar is fair, equitable, and not against public policy.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I would affirm the decision of the court of appeals, which held that the parties to this divorce could not, by this agreement, prevent a circuit court from modifying maintenance payments.

In their 1978 divorce agreement the parties stipulated that the husband would pay the wife $250 per month as maintenance and that the entire estate consisting of a house, two cars, and personal effects would be divided substantially equally. They further stipulated that the husband was to pay debts and obligations incurred before the commencement of the divorce proceedings; neither the stipulation nor the judgment stated the amount of debt involved. Finally the parties stipulated that maintenance and property division payments were to be "permanent and in lieu of any further or additional maintenance payments, except said payments shall terminate upon remarriage of the wife."

The wife now seeks modification of maintenance because of changed circumstances. The court of appeals held that the circuit court retains the power to modify maintenance in this case and gave three reasons for its decision.

First, the legislature expressly allows a circuit court to modify maintenance and specifies only two circumstances under which the circuit court may not modify maintenance. Because the stipulation in this case does not fall under either of these two statutory exceptions, the stipulation cannot bind the circuit court.[1]

Second, the public policy of this state, as reflected in the divorce statutes over the years, is to allow the courts to modify maintenance to protect both spouses should circumstances change after the judgment is entered. A stipulation depriving the circuit court of the power to modify maintenance that is otherwise modifiable under the statutes contravenes this public policy.

Third, because the stipulation is contrary to public policy, the doctrine of equitable estoppel does not apply in this case. *Rintelman v. Rintelman,* 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984).

The issue presented in this case is how should the courts treat the parties' stipulation (incorporated in the judgment) for payments that do not fit comfortably within the statutory categories of property division, waiver of all maintenance, indefinite term maintenance, and limited term maintenance. The court has not, in my opinion, developed a cohesive approach to the question of the parties' ability to establish their own creative resolutions to the issue of maintenance.

---

[1]Section 767.32(1), Stats. 1989-90, provides that maintenance payments may be modified "on the petition . . . to show cause of either of the parties . . .." There are two exceptions: (1) a judgment that waives maintenance payments for either party shall not be revised or altered in that respect, and (2) when the period during which limited maintenance has been paid has terminated, limited maintenance payments may not be modified. *Fobes v. Fobes,* 124 Wis. 2d 72, 77–78, 368 N.W.2d 643 (1985).

Each of our prior cases, upon which the majority relies, turns on the terms of the parties' agreement. The terms of the agreement in this case differ from those in the prior cases. The cases upon which the majority relies are therefore distinguishable and do not provide the answer to the question raised in this case.[2] Given our

---

[2]*Button v. Button,* 131 Wis. 2d 84, 388 N.W.2d 546 (1986), involved property division only, not maintenance.

The stipulation in *Marriage of Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984), did not state that maintenance was not modifiable by the court; it provided merely that the parties agreed that the husband would not seek cessation of maintenance payments on the ground that the wife had remarried. The statutes do not permit a circuit court to order maintenance payments to be made after remarriage of the recipient spouse. The court concluded that the husband was estopped from asking that his payments cease when his former wife remarried. *Rintelman* does not address the question whether the circuit court may modify the stipulated amount of maintenance if there is a substantial change of circumstances.

As the majority opinion recognizes, majority op. at 112, n.11, 469 N.W.2d at 625-626, n.11. The limited term (63 months) "section 71" payments in *Ross v. Ross,* 149 Wis. 2d 713, 439 N.W.2d 639 (1989), were a special type of payment. Section 71 payments, referring to sec. 71 of the Internal Revenue Code, were interspousal payments the parties contracted for over and above the division of property, payable over a limited time period; the parties agreed that the payments were not to be modified; the payments looked like property division under state law but were treated as spousal maintenance for federal tax purposes. In *Ross,* both the husband and the wife expressly waived any rights they had under sec. 767.32(1) at the time of divorce or thereafter to claim or receive maintenance payments. Brief of Petitioner-Respondent in *Ross v. Ross* at p. 8. The court said the parties were bound by their agreement and would not modify the payments because of change of circumstances.

*See also Wright v. Wright,* 92 Wis. 2d 246, 258-63, 284

prior cases and the majority decision, I believe the legislature might wish to reexamine divorcing parties' power to create their own types of maintenance payments and the court's power to modify the parties' agreements upon changes in circumstances. *See* secs. 13.83(1)(c)1 and 13.93(2)(d), Stats. 1989–90.

N.W.2d 894 (1979), holding that the circuit court could not modify stipulated sec. 71 payments when the parties agreed to waive their claims to maintenance.

In *Fobes v. Fobes,* 124 Wis. 2d 72, 368 N.W.2d 643 (1985), the divorce judgment incorporated the parties' stipulation for payment of maintenance to the wife for three years or until the death or remarriage of the wife before the end of the three year period. The court held that the circuit court could modify the maintenance payments during the term of payments upon a finding of changed circumstances.

This case, in contrast to the cases described above, does not involve sec. 71 limited term payments or any form of limited term maintenance payments. The parties in this case did not waive their claim to maintenance. In this case the parties specifically bargained for maintenance to be paid until the death of either party or the remarriage of the recipient spouse.

The following precepts can be derived from the cases: First, the court will enforce the parties' stipulation that extends maintenance payments beyond a time that the court could order maintenance payments. *See, e.g., Rintelman.* Second, if the parties expressly agree to waive maintenance, as the divorce statute allows the parties to do, and stipulate to limited term payments the court will not modify the stipulated limited term payments, even if there has been a change of circumstances. *See. e.g., Ross* and *Wright.* Third, if the parties do not expressly waive maintenance and the parties stipulate to limited term payments, the court retains the power to modify stipulated limited term payments during the term of the payments if there is a change of circumstances. *See, e.g., Fobes.*

None of these precepts governs this case.

For the reasons set forth more fully in the opinion of the court of appeals, *In re Marriage of Nichols,* 156 Wis. 2d 503, 457 N.W.2d 492 (1990), I dissent.