IN RE the MARRIAGE OF:

Russell K. WHITFORD, Petitioner-Appellant,

v.

Karen L. WHITFORD, Respondent-Respondent.†

Court of Appeals

*No. 99–0563–FT. Submitted on briefs September 27, 1999.—Decided December 7, 1999.*

## 2000 WI App 18

(Also reported in 606 N.W.2d 563.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown*, of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Eric S. Darling* of *Schmidt, Darling & Erwin*, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1.   CURLEY, J.   Russell Whitford appeals the trial court's order that requires him to pay $750 per month maintenance to his former wife, Karen Whitford, and that extends the period of maintenance beyond the date agreed to by the parties. He argues that Karen should have been estopped from seeking an extension of the maintenance period because she

entered into an agreement, incorporated into the divorce judgment, which prohibited her from seeking an extension of maintenance after August 31, 1998. We agree and reverse the trial court's order.

## I. BACKGROUND.

¶ 2.  Russell and Karen Whitford were married on May 29, 1976, and divorced on August 17, 1994. At the time of the divorce, the parties entered into a partial marital settlement agreement which made arrangements for child custody and placement, and property and debt division. However, several issues remained unresolved. As a result, the trial court held a hearing on the disputed issues and reached a decision on the following issues: division of the retirement plan, valuation and assessment of responsibility for the life and health insurance, disposition of the marital home, award of the dependency deductions for the children, and a determination that Karen's inheritance had been commingled with marital property. At the time of this hearing, because neither party was employed, the trial court entered a temporary family support order and adjourned the matter until the parties obtained full-time employment. Shortly after the hearing, but before the trial court issued any additional child support or maintenance orders, the trial judge recused himself and another judge was assigned to the case. Several months after the first partial marital settlement was accepted, and after the original trial judge had decided the remaining contested matters, the parties entered into a second stipulation resolving the issues of maintenance and family support.

¶ 3.  This stipulation held open maintenance to Karen until August 31, 1998, but afforded her no abil-

ity to ask for an extension of the time period. The provision in question reads:

> Maintenance. Maintenance is denied to Russell. Maintenance as to Karen is a factor as to the family support payment set forth herein. *Maintenance as to Karen shall terminate and be forever banned on August 31, 1998. There shall be no extensions on maintenance beyond August 31, 1998 under any circumstances.*

(Emphasis added.)

¶ 4. Since the parties' agreement was more restrictive than Wis. Stat. § 767.32 (1993–94),[1] the statute which governs maintenance revisions, and permits an extension of maintenance upon a finding of substantially changed circumstances as long as the request is made prior to the expiration of the maintenance order, the trial court took testimony from the parties concerning their understanding of the provision governing maintenance. After being assured that the parties understood the provision's effect, the trial court accepted the stipulation and incorporated the stipulation into the judgment of divorce.

¶ 5. The parties lived by their agreement, with several revisions due to a change in the visitation order, until several months before the maintenance expiration date, when Karen brought a motion seeking a maintenance extension. The motion was heard by an assistant family court commissioner who, despite the wording of the stipulation, extended Karen's maintenance until August, 2001. Following the family court commissioner's decision, Russell filed a motion pursuant to Wis. Stat. § 767.13(6), asking for a *de novo*

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

41

review of the family court commissioner's order. After a hearing, the trial court declined to apply the estoppel doctrine to prevent Karen from asking for an extension and, instead, issued an order requiring Russell to pay Karen $750 per month maintenance until September of 2001. Russell appeals.

Standard of Review

██

¶ 6.   Whether to apply the estoppel doctrine to an undisputed set of facts is a question of law which we review *de novo. See Nichols v. Nichols*, 162 Wis. 2d 96, 103, 469 N.W.2d 619 (1991). "Accordingly, we review the issues raised here independently and without deference to the circuit court." *Id.* at 103.

## II.   ANALYSIS.

¶ 7.   Russell contends that Karen should be estopped from asking for an extension of the maintenance period beyond the period agreed to by the parties at the time of their divorce. There is no Wisconsin case exactly on point. Wisconsin has, however, applied the estoppel doctrine in family law cases. One of the earliest Wisconsin cases to apply the estoppel doctrine in a divorce case was *Bliwas v. Bliwas*, 47 Wis. 2d 635, 178 N.W.2d 35 (1970). In *Bliwas*, our supreme court determined that a father who had agreed to continue to contribute to his son's educational costs after he had reached the age of majority, in exchange for a reduction in child support payments, was estopped from challenging the trial court's ability to enforce the order. *See id.* at 640–41. The supreme court reasoned that "a person who agrees that something be included in a family court order, especially where he receives a benefit for

so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do." *Id.* at 640.

¶ 8. The seminal case applying the estoppel doctrine to a maintenance provision is *Rintelman v. Rintelman*, 118 Wis. 2d 587, 348 N.W.2d 498 (1984). In *Rintelman*, the parties entered into a stipulation, accepted by the trial court and incorporated into the judgment, that required Mr. Rintelman to pay Mrs. Rintelman maintenance "for her lifetime." Mr. Rintelman sought to terminate his maintenance obligation after learning of his ex-wife's remarriage. He argued, *inter alia*, that the pertinent statutes did not provide for maintenance payments to an ex-spouse after remarriage and, further, that enforcement of the stipulation violated public policy. The supreme court determined that because the statute addressing the termination of maintenance payments after remarriage of a payee did not automatically discontinue maintenance after remarriage, and, instead, required the payor to request that maintenance cease, the statute did not "express an absolute public policy against continuation of court ordered maintenance obligations after remarriage." *Id.* at 592. More relevant to our inquiry, the supreme court also explained that the estoppel doctrine requires that: "both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement." *Id.* at 596.

¶ 9. In *Nichols*, 162 Wis. 2d 96, 469 N.W.2d 619, the supreme court broadened the application of the

estoppel doctrine to prohibit a party from asking for a modification of the amount of maintenance when the parties' stipulation prohibited the modification. *See id.* at 106–07. The supreme court opined that a provision in a divorce judgment, providing that the amount of maintenance cannot be modified, does not violate public policy. *See id.* at 108. Relying on *Rintelman,* the supreme court held that Mrs. Nichols was estopped from seeking an increase in maintenance because four conditions were present:

> first, the parties freely and knowingly stipulated to fixed, permanent, and nonmodifiable maintenance payments and said stipulation was incorporated into the divorce judgment; second, the stipulation was part of a comprehensive settlement of all property and maintenance issues which was approved by the circuit court; third, the overall settlement, at the time it was incorporated into the divorce judgment, was fair, equitable, not illegal, and not against public policy; and, fourth, the party seeking release from the terms of the divorce judgment is seeking release on the grounds that the court did not have the power to enter the judgment without the parties' agreement.

*Id.* at 100–01.

¶ 10. Although the facts and the issue presented here are different from the those presented in *Rintelman* and *Nichols,* we conclude that the principle remains the same—Karen should be estopped from asking for an extension of the maintenance period if the conditions articulated in *Rintelman,* and later expanded upon in *Nichols,* have been met. After reviewing the record, and after extrapolating from the holdings in *Rintelman* and *Nichols,* we conclude that

44

the conditions for applying the estoppel doctrine have been met in this case.

¶ 11.  First, we observe that the colloquy between Karen and the trial judge leaves little doubt that Karen freely and knowingly agreed to the maintenance provision foreclosing her ability to seek maintenance after August 31, 1998.

> [RUSSELL'S ATTORNEY:  And just so we're absolutely clear that this waiver of maintenance on the part of Mrs. Whitford is–it's a concrete cutoff. There's [sic] no extensions. She can come in a year before the five years and it could never be extended beyond the five years, regardless of–And it goes back to 1993, the retro date for the maintenance cutoff.
>
> THE COURT:  Okay.
>
> [RUSSELL'S ATTORNEY:  It'll be, it'll be 8/31/98.
>
> THE COURT:  Okay.
>
> [RUSSELL'S ATTORNEY:  She has no chance to get any maintenance beyond that five years, period.
> . . . .
>
> THE COURT:  Do you want to be bound by this?
>
> KAREN:  Sure.
>
> THE COURT:  Under the circumstances, are you satisfied it's in the best interests of the children at this point?
>
> KAREN:  Yes.
>
> THE COURT:  Attorney Adelman, are you satisfied your client's making a knowing, intelligent, voluntary decision on this?
>
> [KAREN'S ATTORNEY]:  Yes, Judge.

¶ 12.  Despite her acknowledgement of the stipulation's effect and her request that the trial court accept the stipulation, Karen now argues that because the amount of maintenance was not "fixed, permanent and nonmodifiable," estoppel cannot be raised to pre-

vent her from requesting an extension of maintenance. We disagree.

¶ 13. We are satisfied that the words "fixed, permanent and nonmodifiable" apply as well to a maintenance stipulation that prohibits the extension of the maintenance period as they do to a maintenance stipulation that prohibits a change in the amount of maintenance. Here, the parties' stipulation provides: "[M]aintenance as to Karen shall terminate and be forever banned on August 31, 1998. There shall be no extensions on maintenance beyond August 31, 1998 under any circumstances." This is a "fixed, permanent and nonmodifiable" provision preventing Karen from petitioning for an extension of maintenance.

¶ 14. The estoppel doctrine has not been limited solely to stipulations dealing only with the amount of maintenance. Indeed, the major issue in *Rintelman* was whether Mr. Rintelman should be required to pay any maintenance at all after his ex-wife's remarriage, and in *Ross v. Ross*, 149 Wis. 2d 713, 439 N.W.2d 679 (Ct. App. 1989), this court employed the estoppel doctrine to prevent the modification of the payment made under 26 U.S.C. § 71(a)(1) (1984) to Mrs. Ross.[2] Moreover, *Nichols* strongly suggests that the supreme court anticipated that other stipulations besides those governing the amount of maintenance would fall within the estoppel doctrine. "The doctrine of estoppel recognized in *Rintelman* only applies to *terms a court does not have the power to order without the consent of the parties, such as nonmodifiable or permanent maintenance*." *Nichols*, 162 Wis. 2d at 105–06 (emphasis added).

---

[2] Payments made under 26 U.S.C. § 71 are a vehicle created by the tax code permitting nonmodifiable limited-term periodic spousal support.

¶ 15.    Karen contends that the provision in the stipulation is nothing more than a limited term maintenance order which can, under the right circumstances, be extended. We disagree. The wording of this stipulation unambiguously states that Karen is prohibited from asking for an extension of maintenance after August 31, 1998. Moreover, the wording, coupled with the parties' explanation as to its meaning offered to the judge, distinguishes this provision from a routine limited term maintenance provision found in a marital settlement agreement. Thus, we conclude that the first condition for applying the estoppel doctrine has been met.

¶ 16.    The second condition requires that the parties enter into a limited stipulation that is a "comprehensive settlement of all property and maintenance issues" approved by the trial court. *Id.* at 100. While there is no dispute that the trial court accepted the parties' stipulation, the post-judgment court determined that the facts here did not meet the second condition because of the unusual timing of the stipulation. We are sympathetic to the dilemma confronting the trial court on this issue, as Karen and Russell did not enter into one comprehensive stipulation, but instead, entered into *two* stipulations at different times. Complicating matters further, the trial court resolved several contested issues between the time the parties entered into the two stipulations. Nevertheless, we conclude that, despite the unusual factual history of this case, the second requirement is fulfilled.

¶ 17.    We note that, in a previous case, estoppel has been applied in a situation where there was not a complete stipulation of all issues. In *Bliwas*, the supreme court applied the estoppel doctrine to an amended order that modified an earlier divorce decree.

*See Bliwas*, 47 Wis. 2d at 637. And, while *Rintelman* implies that a complete stipulation of all issues is necessary, *Rintelman* states only that to constitute an estoppel, "the overall settlement [must be] fair and equitable." *Rintelman*, 118 Wis. 2d at 596. No case mandates one all-inclusive stipulation in order for estoppel to apply.

¶ 18.   Further, in delving into the logic behind the requirement of an overall settlement, we conclude that the estoppel doctrine will apply when the parties have resolved all other issues concerning the divorce before agreeing to the stipulation by which they will be estopped from seeking an otherwise lawful modification. In reaching this conclusion, we have extrapolated from the aforementioned cases that this condition was required to prevent parties from agreeing to forego the right to a lawful modification without first having the ability to intelligently assess their options and freely and knowingly enter into such an agreement. Stated otherwise, the condition implies that the supreme court wanted to make sure that parties agreeing to stipulations that lead to estoppel in the future have a view of the "big picture." The circumstances here satisfy this requirement. When Karen and Russell entered into their stipulation, they both possessed the necessary knowledge to enable them to freely and knowingly negotiate this term. All the provisions of the divorce judgment were known to Russell and Karen at the time they entered into their nonmodifiable stipulation limiting the maintenance term. When they were negotiating the stipulation, the only remaining unresolved issues were the questions of maintenance and family support. While not all of the other divorce provisions were reached by stipulation, neither party appealed any of the trial court's determinations on the

disputed issues. In effect, the parties accepted the trial court's decision on the disputed issues and adopted those decisions as their own. Thus, when they willingly entered into their maintenance stipulation, the parties had a comprehensive settlement of all property and maintenance issues. As a result, the second condition has been met.[3]

¶ 19.   Next, we address the third condition, which requires that the overall settlement be "fair, equitable, not illegal, and not against public policy."[4] *Nichols*, 162 Wis. 2d at 100. As noted, at the time the trial court accepted the second stipulation placing a limit on the period of maintenance, all the other required divorce findings had been resolved. Karen does not argue that the stipulation was unfair at the time it was entered; rather, she claims that subsequent circumstances rendered it unfair. Karen misunderstands the condition. In deciding whether the stipulation is fair and equitable, courts look to the circumstances at the time of the stipulation, not the circumstances present when a party seeks to repudiate the agreement. *See id.* at 111–12 ("We determine whether a stipulation is fair, equitable, and not against public policy by taking into account the circumstances which existed *at the time the stipulation was incorporated into the divorce judgment*.") (emphasis added).

¶ 20.   Following this directive, we conclude that the parties' maintenance provision at the time it was

---

[3] We also note that our determination will permit divorcing parties to have the option of resolving future disputes by using nonmodifiable stipulations, even though some of their earlier disputes may have been resolved by contested trials.

[4] Inasmuch as Karen has not argued that the stipulated provision violates public policy, we assume that it does not violate public policy.

entered was fair and equitable. When the parties reached their stipulation, each party bargained for certain concessions. Karen gave up the option of receiving maintenance payments for an indefinite period in exchange for Russell's agreement to pay a significant amount of family support. Russell, on the other hand, agreed to pay family support of $2100 per month plus forty-five percent of any other income over $45,000 per year (an amount far above that required by the child support guidelines for three children), in exchange for a fixed maintenance period. Each bargained for a favorable provision in exchange for something else in return. Additionally, in comparing the circumstances present in *Rintelman* and *Nichols*, where the court found the stipulations fair and equitable, with the circumstances here, we conclude that the circumstances compare favorably. Thus, we conclude that the stipulation was fair and equitable at the time of its incorporation into the divorce judgment. Moreover, we conclude that it would be unfair not to invoke the estoppel doctrine because fairness requires that both parties be held to their bargain. As the supreme court observed:

> The doctrine of estoppel set forth in *Rintelman* is equitable only if it applies to both payors and payees of maintenance. If payees may seek modification of nonmodifiable maintenance due to financial setbacks suffered since the divorce, but payors of maintenance may not do the same, the payor is denied the benefit of his or her bargain, while the payee receives the benefit of his or her bargain without risking the effects of what he or she agreed to in the stipulation.

*Nichols*, 162 Wis. 2d at 114. Thus, we conclude that the parties' stipulation fulfills the third condition as it was

"fair, equitable, not illegal and not against public policy." *Id.* at 100.

¶ 21. Our ruling also advances the public policy of resolving disputes in manners other than through time-consuming and costly litigation. In discussing the application of the estoppel doctrine, the supreme court said:

> The advantage of agreements providing that maintenance is not subject to modification is certainty and finality. If nonmodifiable maintenance is not really nonmodifiable, there will be no motivation for a payor spouse to enter into stipulations such as the agreements in *Rintelman, Ross*, and the one in the case at bar. Therefore, the decision of the court of appeals will discourage settlements, contrary to the public policy of this state.

*Id.* at 115.

¶ 22. Next, we turn to the fourth condition: whether Karen is "seeking release from the terms of the divorce judgment . . . on the grounds that the court did not have the power to enter the judgment without the parties' agreement." *Id.* at 100–01. We are satisfied that this condition, too, has been met.

¶ 23. In a disputed divorce trial, WIS. STAT. § 767.26 permits a trial court at the initial divorce trial to waive maintenance, order maintenance payments for a limited time, or order maintenance for an indefinite length of time. Case law directs that a limited maintenance award can be extended if the request was filed prior to the expiration of the maintenance period and there is a substantial change in circumstances. *See Dixon v. Dixon*, 107 Wis. 2d 492, 508, 319 N.W.2d 846 (1982). Consequently, without the parties' stipulation, a trial court is never able to impose a fixed, nonmodifi-

able maintenance period at either the initial divorce hearing or in a post-judgment hearing on the issue. *See* WIS. STAT. §§ 767.26 and 767.32(1). Therefore, here, the trial court could not have ordered the stipulation provision incorporated into the parties' divorce judgment and the fourth condition has been met.

██

¶ 24.    Having concluded that all the conditions found in *Rintelman* and *Nichols* have been met, we resolve that Karen should have been estopped from requesting an extension of the maintenance period. Consequently, we reverse the trial court's order and remand this matter to the trial court for the entry of an order consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.